835 So.2d 1198 (2002)
Lisa Mary BASSETT, Appellant,
v.
Alfred Lagran SAUNDERS, Appellee.
No. 1D01-4098.
District Court of Appeal of Florida, First District.
December 31, 2002.
Rehearing Denied February 3, 2003.
*1199 Appellant, pro se.
Paula L. Walborsky, Mari M. Presley, and Mary A. Kane of Walborsky, Presley and Kane, P.A., Tallahassee, for Appellee.
WOLF, J.
Appellant, Lisa Mary Bassett, appeals an amended final judgment on an amended petition to determine paternity initiated by Alfred Lagran Saunders. Appellant raises five issues on appeal, three of which we find have merit: (1) retroactive child-support; (2) a discrepancy between the court's oral and written rulings; and (3) the residency restriction. The remaining issues are affirmed.
The parties entered into a written agreement regarding the raising of their unborn child. Although the mother refers to this agreement as a "sperm donor" agreement, the trial court correctly found that because the father impregnated the mother in the "usual and customary manner" the agreement was invalid and unenforceable under the sperm donor statute. See Budnick v. Silverman, 805 So.2d 1112 (Fla. 4th DCA 2002) (reversing dismissal of petition for paternity and child support by mother finding father who impregnated mother by the "usual and customary manner" did not fall under rubric of sperm donor statute requiring use of "reproductive technology," and therefore, agreement regarding the father's responsibilities was not enforceable). The mother is not appealing this decision. Despite the provisions in the agreement allowing the mother, appellant, discretion to give the father, appellee, visitation, the parties could not agree on a visitation schedule. As a result, the father filed an amended petition for paternity seeking various relief including shared parental responsibility and child support.
The trial court ordered the father to pay retroactive child support in a lump-sum amount of $1,630.50, retroactive to the date the court found the parties' agreement void and unenforceable (March 6, 2001) rather than retroactive to the date of the birth of the child (June 29, 1997), based on the court's finding that the mother was estopped by her hindrance of the father's visitation, that the parties to some extent relied upon the agreement which the trial court subsequently found void, and that the retroactive support was not needed:
I find that based on the unreasonable and restricted actions of Bassett [mother] in limiting Saunders' [father] contact with the child and the fact that the parties, at least to some extent, may have thought that the agreement they had entered into was valid and binding on them, Bassett is estopped from arguing entitlement to child support retroactive to the birth of the Minor Child. This is not a case in which the receiving party (Bassett), an attorney, has ever had the need to receive child support. To the contrary, she testified that she never wanted it which was evidenced by *1200 the agreement she entered into with Saunders. While child support is to be paid for the benefit of the child, given the circumstances of this case, I find that child support began to accrue as of the date of my order finding the parties agreement to be invalid and unenforceable, i.e., March 6, 2001.
While we commonly refer to an award of child support prior to the date of the order as "retroactive," the issue is not so much "legal retroactivity" as "the extent to which the law will enforce, or conversely, excuse the past due obligations" for the obligation owed by both biological parents to their child from the child's birth. State, Department of Revenue on Behalf of Carbonaro v. Carbonaro, 712 So.2d 1225, 1227 (Fla. 2d DCA 1998). Here, under that guiding principle, we determine the trial court erred in three respects: (1) determining that retroactive child support may be denied based upon unreasonable restrictions on visitation; (2) failing to address all the elements of estoppel and determining that estoppel existed based solely upon the parties reliance on the void agreement; and (3) focusing on the needs of the mother rather than the needs of the child in determining whether to award retroactive support.
The restraint on visitation rights does not excuse a parent from child support obligations. See section 61.13(4)(b), Florida Statutes (2000) (providing that visitation rights and the obligation for child support are unrelated); Gore v. Peck, 800 So.2d 273 (Fla. 2d DCA 2001) (finding it was abuse of discretion not to provide for retroactive support for a period of 24 months prior to the filing of the petition); Department of Health and Rehabilitative Servs. v. Sandidge, 651 So.2d 1261 (Fla. 1st DCA 1995). This case is similar to Richards v. Ryan, 655 So.2d 1184 (Fla. 1st DCA 1995), where this court reversed the trial court's decision denying retroactive child support in a paternity action based on the following reasoning:
The criteria for determining a child support award, including retroactive child support, are the child's needs and the ability of each parent to pay. It is commendable that [the father] himself initiated the proceedings and admitted paternity. Furthermore, at the hearing, he acknowledged that the child has financial needs that have existed since birth, and he admitted a duty to support the child.
. . . .
[The father's] excuse for not paying further child support was [the mother's] denial of access to the child. We note that in the different context of court-ordered child support and visitation, the Florida Legislature has declared that visitation privileges and the obligation to provide child support are unrelated matters, even in the context of a custodial parent's refusal to honor the non-custodial parent's visitation rights. Accordingly, the inability to exercise visitation rights does not relieve the non-custodial parent from the obligation to pay child support.
Id. at 1185-1186 (quotations and citations omitted). Based on this court's reasoning in Ryan, the trial court in the instant case erred in denying retroactive support based on the mother's failure to allow visitation.
The trial court also erred in relying on the agreement as a basis for estopping the mother from seeking child support. In Budnick, the court addressed a situation similar to this case. There, as here, the parties had entered into a "Preconception Agreement" which provided that the parties intended that the father be the biological father of her child, but that he would have no responsibilities. In turn, the agreement provided that the mother would not file a paternity action against the father *1201 or "burden him with the responsibilities of being a father in any way." Id. at 1113. Ten years later, the mother in Budnick, filed a Petition for Paternity and Child Support claiming the agreement was against public policy. The father argued that the mother should be equitably barred from seeking child support in part based upon the "Preconception Agreement."[1] The trial court sided with the father because it found "the delay between the child's birth and the claim deprived the respondent of his rights because he had relied on the agreement during this time." Id. at 1114. On a motion for rehearing and rehearing en banc, the appellate court in Budnick reversed, finding that the rights of support and meaningful relationship belong to the child, not the parent; therefore, neither parent can waive those rights, and agreements relieving a parent of the duty to provide support are void as against public policy:
Florida courts have held that agreements relieving a parent of the duty to support are void as against public policy. The rights of support and meaningful relationship belong to the child, not the parent; therefore, neither parent can bargain away those rights ... The total abdication of parental responsibility present in the instant Preconception Agreement cannot be said to protect the best interests of the child.
Id. at 1113 (citing Shinall v. Pergeorelis, 325 So.2d 431 (Fla. 1st DCA 1975), and Walker v. Walker, 266 So.2d 385 (Fla. 1st DCA 1972)).
It is error to deny child support arrears based on estoppel unless all the elements of estoppel are established. See State, Department of Revenue v. Petro, 765 So.2d 792 (Fla. 1st DCA 2000) The elements which are required to establish estoppel are "that a party misrepresented a material fact upon which the party asserting estoppel detrimentally relied." Id. at 793. The existence of a void agreement by itself is insufficient to meet these requirements. On remand, the court may consider whether all the elements of estoppel have been established and specifically address the required elements.
The trial court further erred in denying retroactive child support based on its finding that support was not needed. The order does not make findings regarding the child's needs. To the contrary it focuses on the mother's needs:
This is not a case in which the receiving party (Bassett), an attorney, has ever had the need to receive child support. To the contrary, she testified that she never wanted it which was evidenced by the agreement she entered into with Saunders.
In Bardin v. State, Dept. of Revenue, 720 So.2d 609 (Fla. 1st DCA 1998), this court reiterated the essential elements for determining child support: the child's needs and a parent's ability to pay. Id. at 611. In Bardin, as here, the father initiated the action for paternity. Although the mother initially denied paternity, she later counter-petitioned for child support. Also as in this case, the child had lived with the mother full time. There we found that where the child had need and the father had the ability to pay, retroactive child support should be awarded. Id. at 612.
In addition, a written order or final judgment must conform to the oral pronouncement of the trial court. See Bardin, 720 So.2d at 613. Here, the father concedes that the trial court's written order stating the mother will have one 2-week vacation with the child does not comport with the earlier oral ruling that each *1202 party would have two 2-week vacations with the child. On remand, paragraph 4(A) should be corrected to reflect "Bassett shall be entitled to two 2-week uninterrupted periods with the Minor Child during the summer." The trial court has discretion to award make-up visitation to the mother for any vacation time lost due to this error.
Finally, the parties both agree that there was no evidence that either parent had any intention of leaving the area, and therefore, the residency restriction clause is unnecessary.[2] Given the contentious nature of the litigation and the tension between the parties, the trial court may have anticipated future conflicts; however, the residency restriction is premature because neither party has sought to relocate, and there are not any findings to support such a restriction. See Harris v. Joyner, 732 So.2d 341 (Fla. 1st DCA 1998); see also Mize v. Mize, 621 So.2d 417 (Fla.1993). On remand, the trial court should strike the residency restriction.
We affirm as to the issues regarding make-up visitation and the calculation of child support, but reverse and remand as to the issues of retroactive child-support and the residency restriction. We also instruct the trial court to incorporate its earlier oral rulings regarding vacation time into the final judgment.
VAN NORTWICK and POLSTON, JJ., concur.
NOTES
[1] Budnick involved the equitable defense of laches. However, the underlying basis for the defense, as in this case, was the void agreement.
[2] Paragraph 4(B)9. currently states; "Neither party shall relocate outside of the State of Florida without the express permission of the Circuit Court in and for the Second Judicial Circuit."