868 So.2d 608 (2004)
Dennis D. ROWLAND, Appellant/Cross-Appellee,
v.
Debrah Rae ROWLAND, Appellee/Cross-Appellant.
Nos. 2D02-2391, 2D02-5823.
District Court of Appeal of Florida, Second District.
March 12, 2004.
*609 Elizabeth S. Wheeler of Berg & Wheeler, P.A., Brandon, for Appellant/Cross-Appellee.
Karol K. Williams of Karol K. Williams, P.A., Tampa, for Appellee/Cross-Appellant.
DAVIS, Judge.
In this appeal from a final judgment of dissolution of marriage, both the Husband, Dennis D. Rowland, and the Wife, Debrah Rae Rowland, challenge numerous aspects of the second amended final judgment of dissolution. We affirm in part, reverse in part, and remand.
When the Wife filed her petition for dissolution, the parties were both forty-five years old, had been married twenty-four years, and had four children, three of whom were still minors.
The source of the parties' income was Big D Enterprises, a sole proprietorship that the parties established when they were first married and built throughout their lengthy marriage. Big D was a food and game concession business that traveled *610 to state fairs and other large events across the United States. It eventually became associated with Deggeller Attractions, a larger food and entertainment business, which allowed Big D to also follow the "Deggeller Route," a profitable string of amusement venues across several states. Annual gross receipts for Big D were $660,632 in 1996, $732,065 in 1997, and $686,082 in 1998. By the time of the parties' dissolution, Big D owned a number of vehicles and pieces of equipment with a total value exceeding $200,000.
Servicing events along the Deggeller Route typically caused the Husband to be away from home between forty-two and forty-five weeks a year. While he was away from home, the Husband's living expenses, including his accommodations, vehicles, and meals, were provided by Big D. Because the parties' business took them away from home for such long periods of time, their children were enrolled at various times in private schools and in schools operated by Deggeller.
When the parties separated in the summer of 1998, the Wife took the children to Pennsylvania. She filed her petition for dissolution on October 12, 1998. The Husband filed a counter-petition and an answer. The parties agreed to go to mediation, resulting in a mediation order directing the Husband to pay $2000 per month in temporary child support, $599 per month for the Wife's car payment, $200 per month for automobile insurance, $500 per month for medical insurance for the Wife and children, and $121 per month for orthodontic care for the parties' son. The mediation order also directed the Husband to continue to maintain the life insurance policy he owned, which named the Wife as the beneficiary.
On December 14, 2001, the trial court entered a final judgment of dissolution, as to which both parties moved for rehearing. After amending the final judgment of dissolution, the trial court entered a second amended final judgment of dissolution on April 4, 2002. Finally, on November 20, 2002, the court entered an order directing the Husband to pay one-half of the Wife's attorney's fees and costs. The appeals of the second amended final judgment and the order on attorney's fees are consolidated for this review.
The Husband initially argues on appeal that the trial court lacked jurisdiction because the Wife failed to establish Florida residency. "Residency under section 61.021[, Florida Statutes (1998),] means `an actual presence in Florida coupled with an intention at that time to make Florida the residence.'" Copas v. Copas, 687 So.2d 885, 887 (Fla. 2d DCA 1997) (quoting Jenkins v. Jenkins, 556 So.2d 441, 442 (Fla. 4th DCA 1990)).
The Husband contends that the Wife's move to Pennsylvania in the summer of 1998 refuted her claim that she had been a resident of Florida for the six months immediately preceding her October 1998 filing of the petition. We do not agree. The Wife testified that although she did take the children to Pennsylvania in the summer of 1998, she did not move her household furnishings until October when she filed her petition for dissolution, indicating that she intended her summer's absence from Florida to be temporary. She also testified that she always intended to continue her residence in Florida once the dissolution was completed. Additionally, the Wife's counsel produced the Wife's Florida driver's license as proof of her residency.
Section 61.052(2) allows corroboration of residency through production of a Florida voter's registration card, a Florida driver's license, or third-party testimony. Furthermore, a continuous presence during *611 the entire six-month period before filing the petition is not required. Hunter v. Hunter, 736 So.2d 801 (Fla. 1st DCA 1999). We conclude that the Wife's testimony and the production of the Wife's Florida driver's license provided competent, substantial evidence supporting the trial court's findings as to the Wife's residency and the court's jurisdiction, and we affirm. See Copas, 687 So.2d 885.
The Husband next contends that the trial court miscalculated his income available for support. In its written order, the trial court first found that the Husband's reported income for the year 2000, before taxes, was $90,000. The court then stated: "After adjustments are made for in-kind payments there is competent substantial evidence to establish that the Husband's income available for support is $8594 monthly or $103,131 annually."
However, the court did not specify the basis for this adjustment. Because the $90,000 figure was stated as a gross figure, and the $103,131 figure was described as income that was available for support, implying a net figure, it appears that the court not only added imputed in-kind payments but also calculated the tax consequences of the new gross figure. That, however, is merely a matter of speculation since actual dollar amounts are not specified. Although the record reveals that the Wife and her expert discussed what they believed the in-kind amounts would be, there is no objective record proof of those amounts or of what the tax consequences were for any given income level.
In fact, the only record evidence of the $8594 monthly income figure is the testimony of Elizabeth Townes, the Wife's expert. While Townes did testify that the Husband had an income of $8594 per month, she later qualified that by stating that $8594 per month was the "starting point" for determining what was available for child support and alimony and that $8594 represented the Husband's gross income, not his net income. It was also clear from her testimony that $8594 per month was a figure that Townes derived only after she added the unspecified, unsupported in-kind payment amounts to the Husband's reported $90,000 taxable income. She explained that she had not been asked to calculate the Husband's net income. Given these apparent inconsistencies, we conclude that the trial court improperly determined the Husband's income available for support and alimony. Accordingly, we reverse the alimony and the child support awards and remand for recalculation.
The Husband further argues that the child support award also improperly includes $270 per month for his daughter Danielle's special needs education. We agree. The record reveals that the $270 monthly payment was intended to pay for the special needs education that Danielle had been receiving at Sylvan Learning Center. However, Danielle had not been attending Sylvan in the months prior to trial. Additionally, the Wife was awaiting further evaluations to determine exactly what special needs education Danielle would require in the future, and it was not clear that Sylvan, and its $270 monthly charge, would be the ultimate choice. Because this determination had not yet been made, the record does not support this award. Accordingly, we reverse as to this issue.
The Husband also claims, and the Wife concedes, that the language used in the second amended final judgment of dissolution does not properly track the language of section 743.07(2), Florida Statutes (2000), which provides that child support may be extended only for those students who are dependent in fact between age eighteen and nineteen, who are still in high *612 school, and who are performing in good faith with a reasonable expectation of graduating before age nineteen. We agree and reverse. On remand the trial court shall amend this provision to properly track the statute.
The Husband is also correct that the trial court miscalculated his child support arrearages. The Wife does not dispute the fact that she included in her arrearage worksheet certain items that the Husband had not been ordered to pay by the temporary support order. Accordingly, we reverse the trial court's determination of child support arrearages and remand for deletion of those items not specifically ordered to be paid in the temporary support order.
Although the Husband also contends that the trial court erred in awarding the Wife rehabilitative alimony to pursue a degree in business, we do not agree. The Wife's testimony certainly supports her need for the award, especially in view of the fact that the trial court awarded Big D Enterprises and all of its equipment, which was the parties' sole source of income, to the Husband. However, on remand, following a recalculation of the Husband's income available for support, the trial court may increase, decrease, or eliminate the award of rehabilitative alimony. See Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983).
Finally, the Husband contends that the trial court erred in requiring him to maintain a $300,000 life insurance policy to secure the support awards. We conclude that, given the Husband's history of child support arrearages, the trial court did not err in ordering the Husband to maintain a term life insurance policy as security for the alimony and child support awards. However, the court did not explain how the life insurance would be distributed in the event of the Husband's death. Thus, on remand, the trial court is directed to determine the amount of life insurance necessary to protect the Wife's and the children's interests and to provide the terms of distribution. See Merkin v. Merkin, 804 So.2d 595 (Fla. 2d DCA 2002).
On cross-appeal, the Wife argues that the amount of the court's award of permanent alimony was in error. Because we are reversing and remanding for recalculation of the Husband's income available for alimony and child support, this award must necessarily be reconsidered.
Finally, the Wife is correct that the trial court erred in denying her request on rehearing to direct the equalizer payment on the business to be paid as a lump sum. In Harper v. Harper, 586 So.2d 1147, 1148 (Fla. 2d DCA 1991), this court held:
We think the wife should be entitled to the benefit of the award at this time, or to the extent that her entitlement is deferred, the amount of her entitlement should bear interest at the statutory rate.... Further, the amount due the wife shall constitute a lien on the husband's interest in the building.
Accordingly, on remand, the trial court is directed to amend the provision ordering the Husband to pay the Wife an equalizer payment so as to require such payment to follow the dictates of Harper.
Because we have found error in the trial court's calculation of the Husband's income, we also direct the trial court on remand to reconsider the order requiring the Husband to pay one-half of the Wife's attorney's fees and costs.
In sum, we reverse and remand for recalculation of the permanent alimony award, the child support award, the award for Danielle's special education needs, the child support arrearages, and the attorney's fee award. We direct that the child *613 support provision properly reflect the directives contained in section 743.07(2). We also direct the trial court to enter findings in support of its life insurance provision and to follow the dictates of Harper, 586 So.2d 1147, in fashioning a provision regarding the equalizer payment. In all other respects, we affirm.
Affirmed in part; reversed in part; and remanded.
SALCINES and VILLANTI, JJ., concur.