879 So.2d 3 (2004)
John C. KUTTAS, Appellant,
v.
Anne R. RITTER f/k/a Anne R. Kuttas, Appellee.
No. 2D03-202.
District Court of Appeal of Florida, Second District.
April 30, 2004.
*4 John Kuttas, Hartsdale, NY, for Appellant John C. Kuttas.
Jeanne L. Coleman of Law Office of Jeanne L. Coleman, Tampa, for Appellee.
CASANUEVA, Judge.
This unique case involves a modification of the child support aspects of a final judgment of dissolution of marriage. Both children concerned, two teenage boys, are affected by autism, one severely and the other mildly, as well as other behavioral and learning problems. The final judgment of dissolution provided for shared parental responsibility, with Ms. Ritter as the primary residential parent and Mr. Kuttas permitted liberal visitation. When Mr. Kuttas moved from Florida to Maryland without notifying Ms. Ritter in advance, Ms. Ritter filed a motion to modify child support on the ground that Mr. Kuttas was no longer able to exercise visitation with the boys approximately every other weekend. The consequence of that move was that Ms. Ritter received no regular relief from taking care of these difficult children, and she moved the court to modify the child support award by departing upward from the guidelines based upon the children's special needs. Mr. Kuttas contested the need for increased support and counterpetitioned for modification of the visitation aspects of the final judgment, requesting that he be allowed visitation for all of the summer months. After numerous motions and hearings, the trial court entered a final judgment modifying both child support and visitation; furthermore, the court ordered that Ms. Ritter was entitled to attorney's fees associated with Mr. Kuttas's failure to comply with an order on motion for contempt and for other bad faith conduct during the litigation. We affirm in part, reverse in part, and remand.

*5 Substantial Change in Circumstances
Section 61.13(1)(a), Florida Statutes (2001), provides that a court has the authority to modify child support orders "when there is a substantial change in the circumstances of the parties." See also Overbey v. Overbey, 698 So.2d 811, 813 (Fla.1997). Mr. Kuttas contends that the court erred in finding a substantial change in circumstances based simply on his move to Maryland and his concomitant inability to exercise weekend visitation, asserting that there is no correlation between visitation and child support. See Bassett v. Saunders, 835 So.2d 1198, 1200 (Fla. 1st DCA 2002) (citing section 61.13(4)(b), Fla. Stat. (2000), for the proposition that "visitation rights and the obligation for child support are unrelated").
In another vein, Mr. Kuttas also argues that modification was inappropriate because his basic statutory guideline obligation after the move to Maryland was changed in an insignificant amount. As stated in the March 2001 order, Mr. Kuttas's basic statutory support obligation was $1040; following the final hearing, his basic obligation (if calculated correctly) increased only $53 to $1093.87 per month, a difference of only five percent. Furthermore, the March 2001 order provided: "Should the Former Wife incur child care costs, the Former Wife shall present proof of the child care expense and the Former Husband shall reimburse her within 14 days of receipt of the accounting." Thus, Mr. Kuttas claims that there had been no substantial change in circumstances, in that the financial ramifications of his new employment were not substantial and a mechanism was in place by which Ms. Ritter would be compensated for child care costs.
Mr. Kuttas's argument is without merit, however, not only because section 61.13(4)(b) speaks to a circumstance not present herea noncustodial parent's withholding of child support based on the custodial parent's refusal to honor the noncustodial parent's visitationbut also because this case presents a unique situation. After Mr. Kuttas moved to Maryland, Ms. Ritter sought for the first time an upward deviation from the child support guidelines based upon the children's "[s]pecial needs, such as costs that may be associated with the disability of a child." § 61.30(11)(a)(8), Fla. Stat. (2001). Both parents agreed that their children were disabled within the meaning of section 743.07(2), Florida Statutes (2001), and would require support beyond the age of majority. See Hanley v. Hanley, 734 So.2d 529, 530 (Fla. 4th DCA 1999) (affirming the requirement that the father continue to pay one-half of the private school tuition beyond the child's eighteenth birthday because the trial court explicitly stated that the child's special needs justified the expense). We agree with the trial court's finding that the children's special needs, which had not been a basis for a prior deviation from the guidelines, together with the impact of Mr. Kuttas's relocation to Maryland, constituted a substantial change of circumstances justifying Ms. Ritter's need for additional child support.[1] *6 We emphasize, however, that Mr. Kuttas's voluntary relocation to Maryland would not constitute a substantial change in circumstances absent the other circumstances unique to this case.

Findings Related to Respite Care
Although it was appropriate for the court to modify child support in an amount exceeding the child support guidelines based on the children's special needs, there was no clear evidence in the record to support the conclusion that Mr. Kuttas's additional obligation should be set at $526.52 per month. Although not spelled out in the order, it is clear from the hearings leading up to the entry of the final judgment that the court calculated Ms. Ritter's additional need based on twenty-four hours of respite care for each of her children per month, at eighteen dollars per hour. From a total cost of $864 per month, the court required the husband to pay 60.94 percent, his percentage of the statutory obligation.
Without question, the record reveals that both of these parents love their children and want to spend time with them. But the testimony of both parents at the final hearing clearly demonstrates the difficulties inherent in parenting not one but two children with some degree of autism, aggression, learning and speech difficulties, and obsessive or compulsive behaviors.
Because of the severity of his mental and physical challenges, the older son, George, receives government-funded services, which include respite care for twelve to fifteen hours a week. On a regular basis, George, who was seventeen at the time of the final hearing, is taken out with other challenged teenagers for group activities and social events for a couple of hours on weekday afternoons and for four or five hours on Saturdays. Jacob, who was then fourteen, functions at a much higher level, and the parents anticipate that he will some day be self-supporting. Unlike George, he does not qualify for government-funded services. Furthermore, both parents testified that each boy tends to do somewhat better, exhibiting less aggression and acting out, when the other is not around.
Ms. Ritter testified that she could secure respite care for George at a cost of eighteen dollars per hour, but she specifically stated that she did not know how much it would cost for both boys to receive care simultaneously. There was no evidence concerning the availability or cost of respite care for Jacob, or, frankly, much evidence of his specific need for it. Therefore, the court's method of doubling the hourly cost to arrive at a figure was arbitrary. See Rowland v. Rowland, 868 So.2d 608 (Fla. 2d DCA 2004) (holding that the record did not support an award of additional support based on the child's special needs because the child had not been attending a learning center in the months before the trial and the mother was awaiting additional information that would evaluate the extent of the child's needs). Furthermore, a representative from the agency providing services to George testified that their agency does not provide overnight respite care under any circumstances on the theory that it is the parents' function to provide basic care for the children. It is clear, however, from a post-final hearing transcript, that the trial court's decision to provide additional support based on twenty-four hours of care *7 did not necessarily assume or require that Ms. Ritter would use it only for twenty-four consecutive hours each month. Therefore, we cannot say that the court abused its discretion in finding a need for twenty-four hours of respite care per month for George.
Because there was no evidence of cost as to Jacob's respite care, however, we hold that the court erred in setting the additional support based upon a finding of a need for twenty-four hours of respite care for each child per month, at a cost of eighteen dollars per hour for each child. Furthermore, the trial court went on to find that Ms. Ritter "may use that support as she sees fit," without specifically requiring that the funds be dedicated to respite care. The problem with this part of the order is that, although Ms. Ritter testified that it was expensive to have the children at home because of their tendency to be destructive and to eat large quantities of food, the trial court never specifically found that the need to deviate upward from the child support guidelines was based on anything other than the children's need for respite care. Cf. Cifrian v. Cifrian, 715 So.2d 1068, 1071 (Fla. 4th DCA 1998) (reversing the trial court's failure to deviate from the support guidelines because the record contained "ample evidence showing that the parties have incurred additional expenses in the past in meeting the needs of their handicapped daughter"). To the extent the order is based upon anything other than the children's need for daytime respite services, it is unsupported by competent, substantial evidence. See Stock v. Stock, 693 So.2d 1080, 1083 (Fla. 2d DCA 1997) (holding that the presence of a child's special need does not, in itself, satisfy the requirement that the court make specific findings; rather, the court must assess the situation in light of all other circumstances and explain why the guideline amount would be unjust or inappropriate).
We also hold that the court abused its discretion by declaring the increase in child support retroactive to the date of the filing of the petition for modification. Section 61.14(1)(a) states that "the court may modify an order of support ... by increasing... the support ... retroactively to the date of the filing of the action or supplemental action for modification as equity requires, giving due regard to the changed circumstances or the financial ability of the parties or the child" (emphasis supplied). In this case there was no evidence that Ms. Ritter had used respite care or had even attempted to do so prior to the final hearing. Although we recognize that respite care for special needs children is not the same as babysitting or other kinds of child care, the financial considerations are similar. In Miles v. Champlin, 805 So.2d 1085, 1086 (Fla. 1st DCA 2002), the First District affirmed an order reducing child support payable to the mother, which was retroactive to the date of the father's petition, because "it was uncontroverted that the children had not incurred day care expenses for at least two years before the petition was filed." Without evidence that Ms. Ritter had incurred charges for respite care prior to the final hearing, it was inequitable to require the husband to pay for seventeen months of increased support between the time of the filing of the petition and the final hearing.

Modified Visitation Scheme
We have discerned no error in the trial court's modification of visitation so that Mr. Kuttas is entitled to visitation during all of the boys' summer break from school, with the exception of the week following their dismissal from school for the summer and the week prior to their return to *8 school in the fall. Furthermore, the trial court's scheme for reduction of Mr. Kuttas's basic child support during the two summer months and the abatement of the additional support award comports with the intent of section 61.30(11)(g).

Attorney's Fees for Litigation of Contempt and Father's Bad Faith
The original final judgment of dissolution was entered in 1993. The parties then filed a number of motions and stipulations concerning child support or visitation, resulting in modifications to the final judgment in 1996, 1998, and March 2001. Ms. Ritter's petition in this case was filed in May 2001, and Mr. Kuttas's counterpetition shortly thereafter. In July 2001, the matter was referred for family mediation, but Mr. Kuttas objected to the "stipulation" resulting from the mediation on the ground that his attorney had signed it without his authority. In a subsequent hearing, Mr. Kuttas's attorney verified that he had acted without first securing his client's consent. Nevertheless, Mr. Kuttas's conduct in objecting to the stipulation formed the basis on which Ms. Ritter alleged that she was entitled to an award of attorney's fees for bad faith.
Meanwhile, before the final hearing, the court, on Ms. Ritter's motion, entered an order compelling Mr. Kuttas, a lieutenant colonel in the Army Reserve, to provide Ms. Ritter with his telephone numbers, including his home phone number, and details of his military assignments, such as his unit number and its location, the name of his commanding officer, and any other information that would allow her to communicate with Mr. Kuttas in the event that there was an emergency or a need for him to help make decisions concerning the autistic children. Because Mr. Kuttas provided his cell phone number and the name of the commander of the company to which he was attached, rather than his home phone number and the name of the two-star general to whom he reported, Ms. Ritter moved to hold him in contempt for violating the order. The court did so at the final hearing and awarded Ms. Ritter attorney's fees for litigation of that motion in an amount to be determined. However, the court denied Ms. Ritter's motion for fees under chapter 61 for litigation of the motion to modify child support.
Mr. Kuttas now challenges Ms. Ritter's entitlement to attorney's fees for contempt and bad faith. The trial court, however, reserved jurisdiction to determine the amount of fees. An order determining entitlement to fees without setting an amount is a nonfinal, nonappealable order. See Argento v. Argento, 842 So.2d 182 (Fla. 2d DCA 2003); McIlveen v. McIlveen, 644 So.2d 612 (Fla. 2d DCA 1994). We would observe, however, that we have some reservations about both orders.
As to the contempt, we recognize that Mr. Kuttas technically violated the order compelling him to provide certain information. However, it is undisputed that Ms. Ritter suffered no harm from this violation. When she needed to reach him in an emergency, she called his cell phone, which he answered. They also apparently communicated somewhat frequently by e-mail. This court would never sanction the deliberate violation of a court order, but when the trial court ultimately assesses fees for contempt, it would be appropriate for it to consider those factorsthe technical violation and the lack of harmin mitigation. In Gauthier v. Gauthier, 768 So.2d 1119, 1120 (Fla. 2d DCA 2000), this court, emphasizing the equitable nature of proceedings under chapter 61, quoted the following pertinent observations of the Florida Supreme Court in Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997):

*9 Under [chapter 61], the financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation.
As to the bad faith allegation, it is not entirely clear that the court has yet even decided that Ms. Ritter is entitled to fees on that basis. Paragraph 20 of the order states that the court "will entertain the Former Wife's request for attorneys' fees and costs associated with her allegations of the Former Husband's bad faith conduct during the pendency of this litigation, at a subsequent hearing." Should the trial court ultimately determine that there has been bad faith, it must do so based on specific findings. Furthermore, because Mr. Kuttas's attorney has admitted that he signed the stipulation without any authority from his client, the trial court should also identify the degree of culpability, if any, attributable to the attorney or to Mr. Kuttas. Commenting on the inherent authority of a court to assess attorney's fees against an attorney for bad faith conduct, the Florida Supreme Court observed the following in Moakley v. Smallwood, 826 So.2d 221, 227 (Fla.2002):
[T]he trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings.
Only then would it be appropriate for the court to assess fees, if any, against Mr. Kuttas and/or his attorney.

Conclusion
We reverse the order modifying the final judgment of dissolution of marriage in the following respects: (1) Mr. Kuttas's basic statutory child support obligation is $1093.87 per month. The court must recalculate any other amounts that derive directly from the basic support obligation. (2) The finding that the husband is to contribute an additional $526.52 per month to Ms. Ritter for the special needs and respite care of the children, which Ms. Ritter may use as she sees fit, is reversed. On remand, the trial court shall make a specific determination as to each child's need for and the cost of respite care. If the court includes an additional amount for other special needs of the children, it must provide an evidentiary basis for doing so. (3) The provision that the increase in child support shall be retroactive to the date of filing, April 26, 2001, is stricken, as is the calculation of arrearage stemming from that finding. In all other respects, the order is affirmed.
Affirmed in part; reversed in part; and remanded.
FULMER and NORTHCUTT, JJ., Concur.
NOTES
[1] We have discovered only one case from this or any other jurisdiction with somewhat similar facts. In Hamilton v. Hamilton, 107 Ohio App.3d 132, 667 N.E.2d 1256, 1258 (1995), the mother sought a deviation from the child support guidelines based upon the father's failure to exercise regular visitation with their severely handicapped daughter. Because the mother had little free time for herself and thus was "assuming both temporal and financial obligations for the handicapped child," id. at 1258, she requested that the father be ordered to exercise regular visitation or pay an increased amount of child support so that she could secure respite care. Observing that child support and visitation are independent, the appellate court reversed the trial court's order forcing the father to exercise his visitation but affirmed the decision to modify the support award based on the need for respite care.