NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BRIAN P. RUSH,                              )
                                           )
            Appellant,                     )
                                           )
v.                                         )      Case No. 2D13-1175
                                           )
LOUIS E. BURDGE; RIVIERA POOLS,            )
INC.; RIVIERA POOLS OF TAMPA, INC.;        )
and JOHN DOE, Lessor,                      )
                                           )
            Appellees.                     )
_____    )

Opinion filed July 11, 2014.

Appeal from the Circuit Court for
Hillsborough County; James M. Barton, II,
Judge.

Steven L. Brannock and Celene H.
Humphries of Brannock & Humphries,
Tampa, and Brian P. Rush of Woodlief &
Rush, P.A., Tampa, for Appellant.

Daniel P. Mitchell of Barr, Murman & Tonelli,
P.A., Tampa, for Appellees.


CASANUEVA, Judge.

Brian P. Rush appeals the trial court order imposing sanctions for

unprofessional conduct in the amount of $5000 for attorney's fees and $3000 for costs,

for a total of $8000.  Mr. Rush is an attorney engaged in this instance in the practice

area of personal injury. The events giving rise to the sanction arose in the context of a Compulsory Medical Examination (CME). We reverse.

This case arises from an incident that occurred on May 9, 2011, at the office of Dr. Michael Shahnasarian, an expert retained by Appellees to conduct a CME of Ronald McKibban, the plaintiff in a personal injury suit brought against Appellees. Mr. Rush, as counsel for Mr. McKibban, raised several last-minute, albeit timely, objections to the CME, which were served on opposing counsel via facsimile at 5:00 p.m., Friday, May 6, 2011. Mr. McKibban appeared for the scheduled CME on Monday morning and was instructed to fill out a seventeen-page pre-exam questionnaire. Mr. McKibban presented the doctor with a copy of the objections, which included an objection to the completion of lengthy information forms, but the CME continued when Dr. Shahnasarian learned that no court order had been entered limiting it.

Mr. McKibban, diagnosed with cognitive impairment and memory loss, became concerned about the questionnaire after answering a few questions and called his attorney, Mr. Rush. Dr. Shahnasarian attempted unsuccessfully to contact one of the defense attorneys. According to Dr. Shahnasarian and two members of his staff, when Mr. Rush arrived at Dr. Shahnasarian's office, the two engaged in a heated discussion, during which Mr. Rush was loud, aggressive, and used abusive and threatening language. Mr. Rush claims he merely informed Dr. Shahnasarian that his client would not fill out the lengthy survey and that Mr. Rush would ask the judge to impose sanctions.

A member of Dr. Shahnasarian's staff told Mr. McKibban that he could tear up the completed portions of the questionnaire, which he did. Ultimately, it was agreed that the CME would continue as scheduled for that day and the dispute regarding the questionnaire would be submitted to the court. Mr. Rush left the office and the CME proceeded without further difficulties. Mr. Rush filed a motion with the court to resolve the questionnaire discovery objection, and Appellees moved for sanctions against Mr. Rush, alleging that he intentionally interfered with and disrupted the May 9 CME, unfairly depriving Appellees of the benefit of the exam.[1]

The trial court ruled as to the questionnaire objection that Mr. McKibban would be required to complete the questionnaire, but with the full assistance of Mr. Rush. After an evidentiary hearing as to the motion for sanctions, the court entered an order imposing sanctions against Mr. Rush, finding he "created an atmosphere of anxiety and hostility which disrupted the examination." After a hearing as to amount, the court ordered Mr. Rush to pay $5000 in attorney's and paralegal fees and $3000 in costs to Appellees.

We review an order imposing sanctions for abuse of discretion. Mercer v. Raine, 443 So. 2d 944, 946 (Fla. 1983); J.D.C. v. M.E.H., 118 So. 3d 933, 935-36 (Fla. 2d DCA 2013). "A trial court . . . abuses its discretion if its ruling is based on an 'erroneous view of the law or on a clearly erroneous assessment of the evidence.' "

---

[1]Appellees' motion alleged several actions by Mr. Rush which disrupted the exam, including destroying evidence and refusing to preserve destroyed evidence, coaching Mr. McKibban and instructing him how to answer questions, loudly and belligerently attempting to dictate to Dr. Shahnasarian the conditions of his examination, and violating copyrights. The trial court's order focuses only on the argument between Mr. Rush and Dr. Shahnasarian.

McDuffie v. State, 970 So. 2d 312, 326 (Fla. 2007) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)).

In this case, Appellees moved for monetary sanctions against Mr. Rush pursuant to Florida Rule of Civil Procedure 1.380 and pursuant to the trial court's inherent power to sanction attorney misconduct. We will address the latter basis first. In the trial court's order awarding sanctions, certain findings of fact are germane to our analysis. First, the trial court found that "Rush's disruptive acts were not committed maliciously or with malevolent intent, but in a misguided attempt to represent his client;" and second, that the most serious charge leveled against him, the destruction of evidence, was not proved.

In Florida, a trial court has the inherent authority to impose a sanction against an attorney for bad faith conduct. Moakley v. Smallwood, 826 So. 2d 221, 226 (Fla. 2002). This power includes the imposition of a financial assessment. Id. However, this power is not unlimited and requires specific findings to ensure its "restrained use," in compliance with due process. Id. at 226-27; see also Kuttas v. Ritter, 879 So. 2d 3, 9 (Fla. 2d DCA 2004).

In the exercise of its inherent authority a trial court must strike an "appropriate balance" between "condemning as unprofessional or unethical litigation tactics undertaken solely for bad faith purposes" against the needs of counsel to provide necessary advocacy in the pursuit of their client's interest. Moakley, 826 So. 2d at 226. To insure a proper balance has been attained, Moakley imposes upon the trial court the necessity to make an express finding of bad faith conduct, together with "detailed

- 4 -

factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." Id. at 227.

From Moakley it is easy to discern that the evil to be avoided is conduct that is undertaken in "bad faith." An examination of the order on review in this case reveals that the court did not make a finding that Mr. Rush acted in bad faith. Rather, the court concluded his behavior was intentional and disruptive; a conclusion with which this court agrees. Next, the court found that Mr. Rush's conduct was not "committed maliciously or with malevolent intent." This finding, at a minimum, suggests the trial court concluded Mr. Rush's behavior lacked the bad faith element. Thus, we conclude that without a finding of bad faith, it was error to impose a financial sanction premised upon the exercise of the trial court's inherent authority. See id.

We are invited by Appellees' counsel to return the matter for further proceedings should we conclude, as we have, that there was a fatal flaw in the order because of a lack of a specific finding of bad faith conduct. We decline the invitation. The facts establish that the CME was completed, that part of the delay can be properly attributed to the need for a judicial resolution of a legitimately disputed issue, and that the significant issues were resolved in Mr. Rush's favor. We also point out that one allegation was refuted before Appellees' motion was even filed. Likely, a proper and complete investigation would have precluded that assertion from being made. We conclude that this type of conduct is not sufficient to come within the parameters of Moakley so as to authorize a financial penalty for tactics undertaken "solely for bad faith purposes." See id. at 226; see also Shniderman v. Fitness Innovations & Techs., Inc., 994 So. 2d 508 (Fla. 4th DCA 2008) (affirming trial court's sanction of fees against

attorney pursuant to <u>Moakley</u> based on evidence demonstrating two years of bad faith litigation, including obtaining a default premised upon a knowingly inaccurate verified complaint and engaging in discovery misconduct to avoid acknowledging the inaccuracy and preserve the default).

Similarly, we reject Appellees' argument that an affirmance is proper based on the trial court's authority to sanction for discovery violations under rule 1.380. Neither the circumstances of this case nor the findings of the trial court support a sanction of attorney's fees against Mr. Rush for failure to make discovery. <u>See</u> <u>Liebreich v. Church of Scientology Flag Serv. Org., Inc.</u>, 855 So. 2d 658, 659 (Fla. 2d DCA 2003) ("Rule 1.380(a)(4) provides for the award of expenses on a motion for order compelling discovery . . . ."); <u>Horace Mann Ins. Co. v. Chase</u>, 51 So. 3d 640, 641 (Fla. 1st DCA 2011) (reversing sanctions as inappropriate under rule 1.380 "because the Appellees did not prevail on a motion to compel and Appellant's counsel did not fail to appear at a duly noticed deposition").

While we conclude that this type of conduct is not sufficient to come within the parameters of <u>Moakley</u> so as to authorize a financial penalty, in so stating, we are not condoning Mr. Rush's behavior. Simply, it was not professional and is not excused by the claim that Mr. Rush has a large docket of casework.

Reversed.


CRENSHAW, J., Concurs.
VILLANTI, J., Concurs with opinion.

VILLANTI, Judge, Concurring.

Although I fully concur in this opinion, I cannot help but further comment on the lack of professionalism and common courtesy displayed by all of the participants in this case, which has ultimately resulted in the expenditure of the parties' resources, the trial court's time, and this court's time.

It is not clear from the record exactly what steps were taken by counsel for Appellees to schedule the CME of Mr. Rush's elderly client, Mr. McKibban, with Dr. Shahnasarian and to communicate the intended scope of that examination. What is clear is that neither party sought or obtained a court order setting forth the parameters of the CME before it was scheduled to occur. While such an order is not a necessity, there are apparently a sufficient number of disputes surrounding this type of examination to warrant the existence of a standard "Hillsborough County Uniform Order on CMEs." This order provides, in pertinent part, that an "examinee will not be required to complete lengthy forms upon arrival at the examiner's office."

Mr. Rush did not initially object to the CME of his client and, as mentioned above, did not seek to have the court enter the Uniform Order on CMEs. However, late on the Friday afternoon before the Monday morning CME, Mr. Rush faxed objections to Appellees' counsel that essentially tracked the provisions of the Uniform Order. Upon receipt of these objections, counsel for Appellees apparently took no steps to alert Dr. Shahnasarian to Mr. Rush's objections and apparently did not attempt to contact Mr. Rush to discuss the matter.[2] Mr. Rush provided a copy of his objections to Mr.

---

[2]While one of the attorneys representing Appellees testified that he was on a plane on the Monday morning of the CME, the record indicates that at least two other attorneys at the firm were working on the case.

McKibban, and Mr. McKibban dutifully took them with him to the CME. However, Dr. Shahnasarian, for his part, refused to honor the objections and told Mr. McKibban that he would follow his standard protocol unless "he got a court order to the contrary." Dr. Shahnasarian then handed Mr. McKibban a seventeen-page questionnaire and expected him to complete it without the assistance of counsel.

Understandably, Mr. McKibban became concerned that his responses might be harming his case; so he elected to call Mr. Rush. Upon receiving the call, Mr. Rush drove to Dr. Shahnasarian's office to address the objections in person rather than addressing them over the phone with Dr. Shahnasarian or opposing counsel. Needless to say, Mr. Rush's actions were perceived as disruptive and adversarial. Ultimately, however, the court imposed the conditions on the CME sought by Mr. Rush, including allowing Mr. McKibban to complete the forms with the assistance of counsel and with limitations on the use of Mr. McKibban's responses.

Clearly Mr. Rush should not have waited until the day before the CME to file his objections. As the facts unfolded in this case, it would have behooved him to obtain entry of the Uniform Order upon being served with the notice of CME. And clearly it might have been better had Mr. Rush attempted to call Dr. Shahnasarian rather than simply appearing in his office lobby. However, it is equally clear that counsel for Appellees should not have ignored Mr. Rush's objections when they were received. As the trial court noted at the evidentiary hearing, counsel for Appellees could have elected to voluntarily comply with the limitations included in the Uniform Order in the spirit of professionalism. And Dr. Shahnasarian—no stranger to serving as an expert in personal injury litigation—should have addressed the issue with counsel for

Appellees when presented with Mr. Rush's objections rather than forcing the disputed forms on Mr. McKibban and then legalistically instructing Mr. Rush to "get a court order." While I certainly do not condone all of Mr. Rush's actions, I agree with my colleagues that, in light of the conduct displayed by all of the professionals involved in this matter, Mr. Rush's conduct was not sanctionable. Had professionalism by any of them prevailed, this matter could have been entirely avoided.