# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

ROBIN NEILEN,

Appellant,

v.

PROFORCE STAFFING, INC.,

Appellee.

Nos. 2D2023-1972, 2D2024-0441
CONSOLIDATED

———————————————

May 21, 2025

Appeal from the County Court for Pasco County; Patrick Moore, Judge.

Scott J. Edwards of Scott J. Edwards, P.A., Boca Raton, and David R. Bear of Bear Legal Solutions, Orlando, for Appellant.

Alejandro F. Hoyos and Meghhaa Kumaarr of Law Office of Alexis Gonzalez, P.A., Coconut Grove, for Appellee.

LABRIT, Judge.

These consolidated appeals arise from an action to foreclose a construction lien. The lienor ProForce Staffing, Inc., sued Robin Neilen alleging that he owed $2,933.14 for work performed at his property. Mr. Neilen responded with a counterclaim for fraudulent lien, alleging that ProForce willfully included in its lien claim amounts for work not performed. After a bench trial, the trial court involuntarily dismissed Mr. Neilen's counterclaim, awarded ProForce $1,215.69 on its lien claim, and awarded ProForce its attorneys' fees and costs as the prevailing party.

Mr. Neilen challenges each of these outcomes and we agree with his arguments in part. It was error to involuntarily dismiss Mr. Neilen's counterclaim, and on this record it was error to find that ProForce was the prevailing party. We reverse these judgments for the reasons discussed below.

## Background

ProForce recorded a claim of lien against Mr. Neilen's property on November 12, 2020, and later filed the underlying lawsuit to foreclose on the lien. ProForce's operative complaint alleged that a ProForce employee performed electrical work for Mr. Neilen in July and August 2020 for which $2,933.14 remained unpaid. Mr. Neilen raised multiple affirmative defenses in response, including a fraudulent lien defense based on section 713.31(2)(a)–(b), Florida Statutes (2020). Mr. Neilen also filed a fraudulent lien counterclaim against ProForce under section 713.31(2)(c), based on the same allegations as his affirmative defense.

The trial court held a two-day bench trial on ProForce's claim and Mr. Neilen's counterclaim in August 2023. ProForce presented testimony from its corporate representative, who reviewed the timesheets ProForce had on file for the subject employee, the wages it paid the employee based on those timesheets, and the unpaid invoices it had submitted to Mr. Neilen. ProForce's representative also explained that its company policy required client confirmation of employee hours, and that ProForce and Mr. Neilen agreed he would confirm the subject employee's hours through text messages with signed timesheets attached. ProForce introduced four employee timesheets into evidence, but only the first two were signed by Mr. Neilen and ProForce did not present any documents showing that Mr. Neilen signed or transmitted the latter two. ProForce's

representative testified that nonetheless, Mr. Neilen approved all four timesheets and that ProForce sent Mr. Neilen four invoices accordingly.

The four invoices ProForce introduced into evidence show that it charged Mr. Neilen $2,933.14 for 87.95 hours of work—30.95 hours under the first two invoices, and 57 hours under the third and fourth invoices. ProForce also introduced the parties' presuit correspondence, including a November 7, 2020, email from Mr. Neilen advising ProForce that "[t]he hours on the time sheets are not correct" and that he didn't authorize the hours for the third and fourth invoices. Mr. Neilen's email further includes a day-by-day breakdown of the hours Mr. Neilen said the employee worked during the last two work weeks—which total 5.5, not 57—and it identifies multiple problems Mr. Neilen experienced with ProForce's employee.

Mr. Neilen elaborated on these issues when he testified at trial. He explained that during the employee's third and fourth weeks on the job, the employee was arrested for driving without a license, complained of not feeling well, required pain medication refills, disclosed that he was addicted to pain medication, reported that his addiction prevented him from concentrating and working, and ultimately was found passed out on Mr. Neilen's property in the middle of a workday. Mr. Neilen testified that he informed ProForce of these events as they occurred, and that he terminated the employee after the last incident. But Mr. Neilen did not dispute that the employee worked the hours stated on the first two timesheets associated with ProForce's first two invoices.[1]

---

[1] Mr. Neilen testified, however, that the work ProForce's employee performed was defective, and he estimated the cost of redoing the work to be "roughly between" $2,500 and $3,000. Mr. Neilen sought a setoff in that amount, but the trial court did not find his testimony on this issue credible and it denied Mr. Neilen's request for a setoff.

3

Mr. Neilen also presented testimony from a handyman who worked alongside ProForce's employee at Mr. Neilen's property. The handyman explained that the employee "didn't really work a whole lot," that he drank on the job, that he left the property after signing in for work on multiple occasions, and that on one of those occasions he saw the employee go to sleep in his camper after signing in for work. After the handyman completed his testimony, Mr. Neilen rested his case as to his fraudulent lien counterclaim against ProForce.

ProForce immediately moved for an involuntary dismissal of Mr. Neilen's counterclaim pursuant to Florida Rule of Civil Procedure 1.420(b). It argued that Mr. Neilen failed to present sufficient evidence of a fraudulent lien under section 713.31(2)(a). The trial court agreed and entered a final judgment involuntarily dismissing Mr. Neilen's counterclaim with prejudice. The judgment found that "Mr. Neilen failed to carry the burden in proving, by a preponderance of the evidence," that ProForce filed a fraudulent lien as described in section 713.31(2)(a).

As for ProForce's underlying claim to foreclose its construction lien against Mr. Neilen, the parties rested after the involuntary dismissal, and the trial court found ProForce entitled to recover $1,215.69 of the $2,933.14 it claimed. The trial court entered a final judgment for ProForce in that amount, along with prejudgment interest. The judgment does not explain how the trial court calculated the award, but the record indicates that it includes the amounts from ProForce's first two invoices plus payment for 5.5 of the 57 hours ProForce billed through its third and fourth invoices. The trial court also found in the judgment that "ProForce had a good faith basis to believe that the amounts reflected on its claim of lien [were] accurate," and that "a good faith dispute exist[ed] as to the amounts reflected on ProForce's claim of

4

lien," which defeated Mr. Neilen's fraudulent lien defense under section 713.31(2)(b).

After entry of the foregoing judgments, ProForce moved for an award of attorneys' fees and costs under sections 713.29 and 713.31(2)(c), arguing that it was the prevailing party.[2] The trial court granted the motion and found ProForce entitled to recover its fees and costs under those prevailing party fee statutes. The parties then stipulated to the amount owed, and the trial court entered a final judgment of attorneys' fees and costs for ProForce for $85,000.

Mr. Neilen timely appealed the three final judgments discussed above—the judgment involuntarily dismissing his counterclaim, the judgment awarding ProForce $1,215.69 on its claim of lien, and the judgment awarding ProForce $85,000 in attorneys' fees and costs.[3] We affirm the judgment on ProForce's claim of lien without comment. But, as we explain below, we find reversible error in the other two.

## Discussion

### I. Judgment Dismissing Mr. Neilen's Counterclaim with Prejudice

Mr. Neilen first challenges the judgment involuntarily dismissing his counterclaim under rule 1.420(b). An involuntary dismissal under this rule in a bench trial is akin to a directed verdict in a jury trial.[4] *See George Anderson Training & Consulting, Inc. v. Miller Bey Paralegal & Fin.,*

---

[2] Mr. Neilen also moved for an award of fees and costs on grounds that he was the prevailing party, but his motion is not at issue on appeal.

[3] Mr. Neilen appealed the first two judgments under case number 2D2023-1972, and he appealed the judgment of attorneys' fees and costs under case number 2D2024-0441. Upon Mr. Neilen's agreed motion, we consolidated these appeals for all purposes.

[4] Like a directed verdict, we review an involuntary dismissal de novo. *George Anderson Training & Consulting, Inc. v. Miller Bey Paralegal & Fin., LLC*, 313 So. 3d 214, 218 (Fla. 2d DCA 2021).

*LLC*, 313 So. 3d 214, 216 (Fla. 2d DCA 2021). It "should be entered <u>only</u> when the evidence, considered in the light most favorable to the non-moving party, fails to establish a prima facie case on the non-moving party's claim." *Id.* at 220. A trial court "can neither weigh the evidence nor consider the credibility of witnesses." *Id.* (quoting *Cap. Media, Inc. v. Haase*, 639 So. 2d 632, 633 (Fla. 2d DCA 1994)). And "[a]s long as competent, substantial evidence has been adduced, even if it conflicts with other evidence, the motion should not be granted." *Id.*

Here, it is clear from the face of the judgment that the trial court weighed the evidence because it found that Mr. Neilen failed to carry the burden of proof on his counterclaim. But "[t]he trial court should not have granted the motion based on the court's belief that [Mr. Neilen] failed to meet his burden of proof." *Luciani v. Nealon*, 181 So. 3d 1200, 1203 (Fla. 5th DCA 2015); *see also Tillman v. Baskin*, 260 So. 2d 509, 511 (Fla. 1972) ("[W]here plaintiff has presented a prima facie case . . . the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof."). In doing so, "the trial court failed to limit itself to a determination of whether [Mr. Neilen] made a prima facie case and impermissibly weighed the evidence." *George Anderson*, 313 So. 3d at 220.

Even more, the record demonstrates that Mr. Neilen established a prima facie case of fraudulent lien. Under the fraudulent lien statute, section 713.31(2)(a), Mr. Neilen had to show that ProForce (1) willfully exaggerated the amount of its lien claim, (2) willfully included a claim for work not performed, or (3) "compiled [its] claim with such willful and gross negligence as to amount to a willful exaggeration." The evidence— viewed in Mr. Neilen's favor—showed that ProForce recorded a claim of

lien for 87.95 work hours, but its employee worked only 36.45 hours (30.95 from the first two invoices and 5.5 from the latter two). The evidence also showed that before ProForce recorded its lien claim, Mr. Neilen notified ProForce that two of the employee's four timesheets were wrong, that he did not sign or authorize those two timesheets, and that the employee worked far fewer hours than invoiced due to serious issues with the employee's well-being and performance. Despite this notice, and despite lacking the written client confirmation that the parties agreed upon and ProForce's policy required, ProForce recorded its claim of lien. This evidence and all reasonable inferences drawn from it were enough to make a prima facie showing that ProForce willfully included a claim for work not performed, or at least compiled its claim with willful and gross negligence. *See Delta Painting, Inc. v. Baumann*, 710 So. 2d 663, 664 (Fla. 3d DCA 1998); *Hobbs Constr. & Dev., Inc. v. Presbyterian Homes of the Synod of Fla.*, 440 So. 2d 673, 674 (Fla. 1st DCA 1983). For these reasons, it was error to involuntarily dismiss Mr. Neilen's counterclaim.

In such cases, we normally reverse and remand for further proceedings because "[w]hen a prima facie case is made by plaintiff, fairness would appear to require that the trial judge weigh it in the light of the strength or weakness of the defendant's defense evidence, if any, as in the case of a jury trial." *George Anderson*, 313 So. 3d at 221 (alteration in original) (quoting *Tillman*, 260 So. 2d at 512). Here, however, the trial court already weighed both parties' evidence relative to Mr. Neilen's fraudulent lien counterclaim when it considered—and rejected—Mr. Neilen's fraudulent lien defense. Both Mr. Neilen's counterclaim against ProForce and his affirmative defense to ProForce's underlying claim alleged that ProForce filed a fraudulent lien for the

7

reasons described in section 713.31(2)(a). And in entering judgment for ProForce on its underlying lien claim, the trial court found Mr. Neilen's fraudulent lien defense unsupported and determined that ProForce acted in good faith. Thus, because the fact finder already weighed both sides' evidence on whether ProForce filed a fraudulent lien, remanding Mr. Neilen's fraudulent lien counterclaim for further proceedings would be ineffectual and would needlessly consume judicial resources.

We therefore reverse and instruct the trial court to vacate the final judgment involuntarily dismissing Mr. Neilen's counterclaim. We also instruct the trial court to enter a new final judgment on the merits of Mr. Neilen's fraudulent lien counterclaim that conforms to the trial court's findings on Mr. Neilen's fraudulent lien defense, by which Mr. Neilen shall take nothing by his counterclaim and ProForce shall go hence without day.

## II. Judgment Awarding Attorneys' Fees and Costs to ProForce

Mr. Neilen also challenges the judgment awarding ProForce $85,000 in attorneys' fees and costs. He submits that the trial court applied the wrong legal standard when it determined entitlement and that ProForce was not the prevailing party under the correct standard. We agree in part.[5]

Historically, courts applied the "net judgment rule" in construction lien cases, under which a lienor was deemed the prevailing party if it recovered a net judgment in its favor. *See Prosperi v. Code, Inc.*, 626 So. 2d 1360, 1362–63 (Fla. 1993). But our supreme court disapproved of a

---

[5] We review a trial court's prevailing party determination for abuse of discretion, but whether the trial court applied the correct legal standard is an issue we review de novo. *See IOU Cent., Inc. v. Pezzano Contracting & Dev., LLC*, 311 So. 3d 295, 298 (Fla. 2d DCA 2020); *Wells v. Halmac Dev., Inc.*, 189 So. 3d 1015, 1019 (Fla. 3d DCA 2016).

8

mechanical application of this rule in *Prosperi*, 626 So. 2d at 1363, and it later held in *Trytek v. Gale Industries, Inc.*, 3 So. 3d 1194, 1202 (Fla. 2009), that the "significant issues" test applies in construction lien cases. *Trytek* explained:

> The overall purpose of section 713.29 and attorneys' fee statutes in general is to discourage rather than encourage needless litigation. Consistent with this purpose, we conclude that a trial court has the discretion to make a determination that neither party has prevailed on the significant issues in litigation after a thorough examination of all the factors, including the issues litigated, the amount of the claim of lien versus the amount recovered on the lien, the existence of setoffs and counterclaims by the homeowner, and the amounts offered by either party to resolve the issues prior to the litigation, assuming that those negotiations were not otherwise confidential either by agreement or statute.

*Id.* at 1203. Thus, a net judgment in the lienor's favor is a factor—but not the only factor—a trial court should consider in identifying a prevailing party. *See id.*

Mr. Neilen contends that the trial court reverted to the old test and applied the "net judgment rule" when it found ProForce to be the prevailing party. It is not clear to us that the trial court made this error; the parties' arguments to the trial court focused on the "significant issues" test, and the trial court found that after "considering all of the factors, . . . ProForce, in fact, [wa]s the prevailing party." We must give the trial court the benefit of the doubt. *See Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979).

We agree with Mr. Neilen's other contention, however, that "[a] proper application of the significant issues test would have determined that Pro[F]orce was not the prevailing party." Under both attorneys' fee statutes applicable here—section 713.29 and section 713.31(2)(c)—the "prevailing party" is the party that prevailed on the significant issues in

the entire case.  *See Trytek*, 3 So. 3d at 1202; *Prosperi*, 626 So. 2d at 1362–63; *Marocco v. Brabec*, 299 So. 3d 416, 421–22 (Fla. 1st DCA 2019).  That is, "the party who prevails on the 'significant issues' in the entire litigation, not just the lien claim," is the party entitled to fees under section 713.29.  *Marocco*, 299 So. 3d at 421; *see also Trytek*, 3 So. 3d at 1202 n.10 ("[A]lthough section 713.29 applies only to lien claims, Trytek's judgment on its counterclaim could be considered in the trial court's determination of the prevailing party because the counterclaim is considered as part of the lien claim.").  Likewise, to be entitled to fees under section 713.31(2)(c), a "party must be the prevailing party in the case as a whole," and not just prevail on the fraudulent lien claim under that statute.  *Newman v. Guerra*, 208 So. 3d 314, 319 (Fla. 4th DCA 2017).

*Trytek* establishes that the "significant issues" a trial court should consider are the "real issue[s] in the case" that are the focus of the litigation, not the unchallenged issues that were never in dispute.  3 So. 3d at 1197, 1202.  The only real issues in this case were whether ProForce was entitled to payment for its third and fourth invoices—as Mr. Neilen did not dispute the hours on the first two—and whether Mr. Neilen could offset any payment he owed based on his contention that ProForce's lien was fraudulent or its employee's work was defective.[6] ProForce clearly prevailed on the second issue, as the trial court rejected Mr. Neilen's fraudulent lien argument and his request for a setoff.  But

---

[6] Arguably Mr. Neilen's contention that ProForce's employee's defective work cost him "roughly between" $2,500 and $3,000 was not a significant issue, as Mr. Neilen presented only limited testimony on it and ProForce presented no evidence to dispute it.  At bottom, the real issue was whether Mr. Neilen owed ProForce anything or whether his defenses and counterclaim could reduce ProForce's recovery to zero.

under no reasonable interpretation of the evidence and outcomes could ProForce be deemed to have prevailed on the first issue.

ProForce sought total payment in the amount $2,933.14 for 87.95 hours of work—57 of which ProForce charged through its third and fourth invoices. Mr. Neilen disputed these invoices and told ProForce that its employee worked only 5.5 of those 57 hours. ProForce pursued a lien claim for the full amount nonetheless, and after the parties litigated and presented their evidence regarding the disputed hours, the trial court found in Mr. Neilen's favor on this significant issue. It awarded ProForce for only 5.5 of the 57 hours in dispute, along with the undisputed hours from the first two invoices, for a total of $1,215.69.

The trial court appeared to minimize this result, reasoning that although the total award was less than fifty percent of the total amount ProForce claimed, the difference between the two was "less than $1,000 plus difference." But the mathematical difference between the amount claimed and the amount recovered ($1,717.45) is not what's significant; the significant factor is that ProForce did not recover a judgment for any of the hours Mr. Neilen disputed. This result cannot be denied. And it establishes that ProForce did not prevail on this significant issue.

In finding that ProForce was the prevailing party, the trial court also appeared to consider evidence showing that Mr. Neilen did not make any settlement offers to ProForce. It remarked, "Mr. Neilen . . . made no attempts to offer any amount to pay ProForce at any point." While settlement offers are certainly relevant to the prevailing party analysis, it is "the amounts offered by either party to resolve the issues prior to the litigation" that matter. *Trytek,* 3 So. 3d at 1203 (emphasis added). And "the burden of fair dealing and good-faith negotiation" does not lie only with a defendant like Mr. Neilen. *See id.* at 1200 (quoting *C.U. Assocs.,*

11

*Inc. v. R.B. Grove, Inc.*, 472 So. 2d 1177, 1178 (Fla. 1985)). The trial court appeared to overlook the fact that neither party made any settlement offers or efforts to compromise presuit. This factor does not weigh in either party's favor, and it does not support a finding that ProForce was the prevailing party.

In sum, each party prevailed, and each party lost, on a significant issue in the case, and there was no other factor that tipped the scale in ProForce's favor. Where a "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence," a trial court abuses its discretion. *Buzby v. Turtle Rock Cmty. Ass'n*, 333 So. 3d 250, 253 (Fla. 2d DCA 2022) (quoting *Rush v. Burdge*, 141 So. 3d 764, 766 (Fla. 2d DCA 2014)). The trial court did so here when it found ProForce to be the prevailing party and awarded ProForce its attorneys' fees and costs. *See HHA Borrower, LLC v. W.G. Yates & Sons Constr. Co.*, 266 So. 3d 1267, 1268 (Fla. 5th DCA 2019) (holding trial court abused its discretion in awarding prevailing party attorneys' fees where "both [parties] won on significant issues, [but] they also both lost on significant issues"); *cf. Schoenlank v. Schoenlank*, 128 So. 3d 118, 121–22 (Fla. 3d DCA 2013) (concluding trial court did not abuse its discretion in denying award of prevailing party attorneys' fees where "each party prevailed and lost on significant issues as to the litigation in its entirety"). We therefore reverse the judgment of attorneys' fees and costs for ProForce, and we remand with instructions for the trial court to vacate it.

Affirmed in part; reversed in part; remanded with instructions.

KHOUZAM and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.