826 So.2d 221 (2002)
Barbara MOAKLEY, Petitioner,
v.
Sheri SMALLWOOD, Respondent.
No. SC95471.
Supreme Court of Florida.
February 28, 2002.
Rehearing Denied April 18, 2002.
*222 John P. Fenner, Boca Raton, FL, for Petitioner.
Sheri Smallwood, pro se, Key West, FL, for Respondent.
PARIENTE, J.
We have for review Moakley v. Smallwood, 730 So.2d 286 (Fla. 3d DCA 1999), a decision of the Third District Court of Appeal, which expressly and directly conflicts with the decision of the Second District Court of Appeal in Israel v. Lee, 470 So.2d 861 (Fla. 2d DCA 1985), and the First District Court of Appeal in Miller v. Colonial Baking Co., 402 So.2d 1365 (Fla. 1st DCA 1981). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The conflict issue presented in this case is whether a trial court possesses the inherent authority to assess attorneys' fees as a sanction against an attorney for the attorney's bad faith conduct during the course of litigation.

BACKGROUND
This case arises out of post-dissolution proceedings and the imposition of attorneys' fees against petitioner Barbara Moakley, the former wife, and her trial attorney. The Third District explained the factual background of this case as follows:
According to the findings of the trial court in post-dissolution proceedings, the former wife [Moakley] subpoenaed the former husband and two of his former attorneys, seeking to compel production of an original note which had been awarded to the former wife in the final judgment. On its face, the motion to compel production conceded that one of the former attorneys, appellee Sheri Smallwood, did not have the note and she so testified. Because of short notice, Ms. Smallwood was unable to be relieved of the obligation to attend the hearing, fifty miles from her office. The trial court granted monetary sanctions against the former wife and her counsel. The court concluded that there was no reasonable explanation for issuance of the subpoena to Ms. Smallwood.
Moakley, 730 So.2d at 286-87 (footnote omitted). The trial court imposed attorneys' fees in the amount of $1125 against Moakley and her counsel, Margaret Broz, as compensation for the time Smallwood expended in responding to the subpoena. See id. at 287. On appeal, the Third District *223 affirmed the imposition of monetary sanctions against both Moakley and her attorney, concluding that the trial court possessed the inherent authority to do so. See id.

ANALYSIS
The issue before us in this case is whether the trial court possessed the inherent authority to impose attorneys' fees against Moakley's attorney absent a specific rule or statute authorizing the imposition of such fees.[1] This Court has explained *224 that "[g]enerally, a court may only award attorney's fees when such fees are `expressly provided for by statute, rule, or contract.'" Bane v. Bane, 775 So.2d 938, 940 (Fla.2000). However, since 1920, this Court has recognized the inherent authority of trial courts to assess attorneys' fees for the misconduct of an attorney in the course of litigation. See United States Sav. Bank v. Pittman, 80 Fla. 423, 86 So. 567, 572 (1920). In Pittman, this Court approved an award of fees against an attorney, where the trial court found that the attorney had unnecessarily conducted foreclosure proceedings on a mortgage for the sole purpose of increasing his fee and that the attorney was acting in his own self-interest and against the wishes of his client. Id.
As we have subsequently stated, "Clearly, a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So.2d 606, 608-09 (Fla. 1994). Most recently, the Court in Bitterman v. Bitterman, 714 So.2d 356, 365 (Fla. 1998), recognized the inherent authority of a trial court to award attorneys' fees for bad faith conduct against a party, even though no statute authorized the award:
The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith. Attorney's fees based on a party's inequitable conduct have been recognized by other courts in this country. See Vaughan v. Atkinson, 369 U.S. 527, 530-31, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (awarding attorney's fees based on respondent's "recalcitrance" and "callous" attitude); Rolax v. Atlantic Coast Line R.R. Co., 186 F.2d 473, 481 (4th Cir.1951) (holding that attorney's fees were justified because "plaintiffs of small means have been subjected to discriminatory and oppressive conduct by a powerful labor organization"). We note that this doctrine is rarely applicable. It is reserved for those extreme cases where a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Foster v. Tourtellotte, 704 F.2d 1109, 1111 (9th Cir.1983) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). "Bad faith may be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir.1982) (quoting Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)). This Court and other courts in this state have recognized that attorney's fees can be awarded in situations where one party has acted vexatiously or in bad faith. See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1148 (Fla.1985) ("This state has recognized a limited exception to this general American Rule in situations involving inequitable conduct."); Hilton Oil Transport v. Oil Transport Co., 659 So.2d 1141, 1153 (Fla. 3d DCA 1995); In re Estate of DuVal, 174 So.2d 580, 587 (Fla. 2d DCA 1965).
Nothing in the Court's reasoning in Bitterman, in which we acknowledged the trial court's inherent authority to award attorneys' fees under extremely narrow circumstances, limits the application of this authority to a party rather than the party's attorney. Indeed, the attorney is not only a representative of the client, but also an officer of the court. See Preamble to Rules of Professional Conduct, R. Regulating Fla. Bar ("A lawyer is a representative of clients, an officer of the legal system, *225 and a public citizen having special responsibility for the quality of justice.").
Moreover, appellate decisions that have addressed this issue have recognized that trial courts must sparingly and cautiously exercise this inherent authority to award attorneys' fees against an attorney. For example, in Patsy v. Patsy, 666 So.2d 1045 (Fla. 4th DCA 1996), another post-judgment dissolution proceeding, the Fourth District affirmed an award of attorneys' fees and costs against an attorney for the bad faith filing of a motion to disqualify counsel. The Fourth District recited the facts as follows:
In a modification proceeding in which he represented the former husband, Meisler filed a motion to disqualify opposing counsel on the ground that he had perpetrated a fraud on the court on two prior occasions. At Meisler's request, based on the motion, the court stayed further proceedings until after it conducted an evidentiary hearing on the motion to disqualify. After hearing the evidence the trial court found that the motion had no factual basis, was filed solely to delay the proceedings, and was a sham. The court assessed attorney's fees of $1,870 and costs.
Id. at 1046 (emphasis supplied). After reviewing the applicable case law, the Fourth District concluded that trial courts possess the inherent authority to assess attorneys' fees for litigating in bad faith. See id. at 1047; see also David S. Nunes, P.A. v. Ferguson Enter., Inc., 703 So.2d 491, 491 (Fla. 4th DCA 1997) (citing Patsy for the proposition that the trial court had inherent authority to assess attorneys' fees against counsel who did not attend a mediation and advised his clients that they also did not have to attend).
Similarly, in Lathe v. Florida Select Citrus, Inc., 721 So.2d 1247, 1247 (Fla. 5th DCA 1998), the Fifth District upheld the imposition of attorneys' fees against an attorney who lied to the trial court after he failed to appear for a deposition. The Fifth District observed that the attorney did not deny that he lied to the court, but argued that the trial court could not impose attorneys' fees without first finding him in contempt. See id. Relying on this Court's decision in Pittman, the Fifth District rejected this argument and held that a "trial court has inherent authority to order an attorney, who is an officer of the court, to pay opposing counsel's reasonable attorney's fees incurred as a result of his or her actions taken in bad faith." Lathe, 721 So.2d at 1247. The Fifth District explained that in the case before it, the attorney had notice and an opportunity to object to the sanctions and to provide mitigating evidence before awarding fees for the attorney's bad faith conduct. See id.
Indeed, many jurisdictions recognize this limited inherent authority to impose attorneys' fees against an attorney for bad faith conduct in the course of litigation. See, e.g., Eberly v. Eberly, 489 A.2d 433, 449 (Del.Super.Ct.1985) (holding that trial court had inherent authority to assess attorneys' fees against attorney who "unreasonably and vexatiously prolonged the proceedings below and increased the cost of representation to both parties"); Charles v. Charles, 505 A.2d 462, 467 (D.C.1986) (holding that trial court has inherent authority to impose attorneys' fees against attorney who repeatedly failed to obey court orders to file an answer or affidavit in lieu thereof); Lester v. Rapp, 85 Hawai`i 238, 942 P.2d 502, 505-06 (1997) (remanding case to trial court to determine whether counsel's misrepresentation of facts to the court constituted bad faith and whether his conduct resulted in the unnecessary incurrence of attorneys' fees); State v. Grant, 487 A.2d 627, 629 (Me.1985) (holding that trial court had inherent authority *226 to compel attorney who improperly took money from client to return money to client); Battryn v. Indian Oil Co., 472 A.2d 937, 941-42 (Me.1984) (holding that trial court had inherent authority to impose sanctions against attorney for discovery abuses); Winters v. City of Oklahoma City, 740 P.2d 724, 727 (Okla.1987) (holding that the intentional filing and prosecution of a claim under Oklahoma law that lacked any plausible factual or legal basis constituted a bad faith action and justified the award of sanctions against the attorney); Coburn v. Domanosky, 257 Pa.Super. 474, 390 A.2d 1335, 1338 (1978); Van Eps v. Johnston, 150 Vt. 324, 553 A.2d 1089, 1091 (1988) (holding that trial courts have inherent authority to impose sanctions against attorneys for "bad faith," which encompasses both the filing and the conduct of litigation and includes "abuse of the judicial process"); Daily Gazette Co. v. Canady, 175 W.Va. 249, 332 S.E.2d 262, 266 (1985) (holding that trial court has inherent authority to "order payment by an attorney to a prevailing party reasonable attorneys fees and costs incurred as the result of his or her vexatious, wanton, or oppressive assertion of a claim or defense that cannot be supported by a good faith argument for the application, extension, modification, or reversal of existing law"). See generally Alan Stephens, Annotation, Attorney's Liability Under State Law for Opposing Party's Counsel Fees, 56 A.L.R.4th 486 (1987).
In reaching their conclusions, many jurisdictions rely upon the United States Supreme Court's decision in Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), in which the Court held that federal district courts have the inherent authority to impose attorneys' fees against counsel for "bad faith" conduct. As explained in Roadway Express, the "power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." Id. (footnote omitted). The Supreme Court followed Roadway Express in Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), in which it explained:
A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal] Rules [of Civil Procedure], the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.
(Citation omitted.) The Supreme Court has explained, however, that a "specific finding as to whether counsel's conduct... constituted or was tantamount to bad faith" is a necessary precedent to any sanction of attorney's fees under the trial court's inherent authority. Roadway Express, 447 U.S. at 767, 100 S.Ct. 2455.
We thus hold that a trial court possesses the inherent authority to impose attorneys' fees against an attorney for bad faith conduct. In exercising this inherent authority, an appropriate balance must be struck between condemning as unprofessional or unethical litigation tactics undertaken solely for bad faith purposes, while ensuring that attorneys will not be deterred from pursuing lawful claims, issues, or defenses on behalf of their clients or from their obligation as an advocate to zealously assert the clients' interests. The *227 inherent authority of the trial court, like the power of contempt, carries with it the obligation of restrained use and due process.[2]
Accordingly, we conclude that the trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings. In addition, the amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney. Moreover, such a sanction is appropriate only after notice and an opportunity to be heardincluding the opportunity to present witnesses and other evidence. Finally, if a specific statute or rule applies, the trial court should rely on the applicable rule or statute rather than on inherent authority. See Chambers, 501 U.S. at 50, 111 S.Ct. 2123 ("Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent authority.").
With regard to the conflict cases, we disapprove the decisions in Israel and Miller to the extent that they rejected the inherent authority of the trial court as a basis for awarding attorneys' fees. We do not decide whether the award of attorneys' fees would have been proper in those cases.
In this case, we conclude that the Third District's decision must be quashed because the trial court did not make an express finding of bad faith, and did not provide the attorney notice and an opportunity to be heard before imposing the attorneys' fees. Instead, the trial court merely found that there was no reasonable explanation for the issuance of the subpoena. See Moakley, 730 So.2d at 287. Therefore, although we approve of the Third District's recognition of the inherent authority of the trial court to assess attorneys' fees, we quash the decision below in accordance with this opinion.
It is so ordered.
SHAW, HARDING, ANSTEAD, and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only with an opinion.
LEWIS, J., concurs in result only.
WELLS, C.J., concurring in result only.
I concur only in quashing the district court decision.
I do not join the majority's opinion because I conclude that it is not in accord with this Court's precedent. In Burns v. *228 Huffstetler, 433 So.2d 964 (Fla.1983), this Court said:
There are three alternative methods for the disciplining of attorneys, and the first two procedures derive directly from this Court's delegation of its power to regulate the practice of law in Florida, as conferred by article V, section 15, Florida Constitution. The first alternative is the traditional grievance committee-referee process in which an attorney is prosecuted by The Florida Bar under the direction of the Board of Governors. Under this procedure, sanctions are imposed by the Supreme Court after the Court considers the referee's recommendations. See Fla. Bar Integr. Rule, art XI, Rules 11.02-11.13. The second alternative is a procedure initiated by the judiciary with the state attorney prosecuting. Judgment is entered by the trial court and is subject to review by the supreme court. See Fla. Bar Integr. Rule, art. XI, Rule 11.14. The third alternative is the exercise of the inherent power of the courts to impose contempt sanctions on attorneys for lesser infractions, a procedure which this Court expressly approved in Shelley v. District Court of Appeal, 350 So.2d 471 (Fla. 1977).
Id. at 965.
The present majority introduces a new basis for sanctioning lawyers through the imposition of monetary sanctions against an attorney for "bad faith conduct." Majority op. at 227. My problem with this is that, apparently, this is a sanction which comes within neither attorney discipline procedures nor the Court's contempt power. Therefore, there are no procedures to apply to the application of this sanction, nor are there definitions of bad faith or limitations on the sanctions. The majority holds, in its footnote 2, that the justification for finding the Court's power to impose the new sanction is because "the actions in this case could not have been disciplined through the trial court's contempt power, because the contempt power is based on the failure to obey a specific judgment or order of the court." Majority op. at 227, n. 2. This statement makes it clear that the bad-faith sanction is broader than contempt.
I recognize that the majority states that the trial judge must make an express finding of bad faith, set out detailed factual findings, and give notice and an opportunity to be heard. However, bad faith is not defined. What is bad faith in the subjective view of one judge is in all likelihood not going to be bad faith to another. Lawyers will not have notice of the boundaries of "bad faith." Furthermore, I do not know on what basis a lawyer could get appellate relief from a trial court's determination of "bad faith." Clearly, the review would be an "abuse of discretion," but without a specific definition of "bad faith," on what basis can there be an abuse of discretion?
The majority likewise does not set any limits on the monetary sanctions which the trial court can impose. Are the sanctions limited to attorney fees actually expended by the aggrieved party, or are the monetary sanctions to be punitive, as a fine would be in a contempt situation?
Based upon my experience as a litigator, it is tempting to join the majority because I certainly have witnessed firsthand the type of lawyer abuse which the majority is desirous of sanctioning. Since I have been on this Court, I am aware of instances of lawyer abuse which should have been sanctioned but was not, for the likely reason that the trial judge did not feel that there was an effective way to do it.
I deplore this abuse, but I have to weigh this against the problems I foresee with opening a new way to sanction lawyers which has the lack of specificity resulting from this opinion. As clearly as the judicial system needs to be protected from this *229 type of lawyer abuse, the judicial system has to also be protected against restraining lawyers in work on innovative and unpopular causes and in innovative ways which to some trial judges could appear to be "bad faith." Lawyers cannot be placed in a position of fearing monetary exposure based upon decisions which cannot be effectively reviewed by appellate courts. Frankly, I am concerned about arbitrary or intimidating applications of undefined and unlimited "bad faith" sanctions.
Rather than announcing this change in the ways lawyers can be sanctioned in this opinion, which in fact quashes the approval of such sanctions, I conclude it would be better to have the rules committees develop rules in which "bad faith" is defined and the sanctions specified. In that way, the Bar can debate the issues and present to the Court a proposal that has been fully and fairly scrutinized.
Therefore, I would quash the district court's decision and remand with instructions that in this case the trial court's award of monetary sanctions be stricken. I would join in sending the issue of bad faith sanctions against lawyers to the rules committees.
NOTES
[1] Smallwood urges as an alternative basis for affirmance section 92.231, Florida Statutes (1997), which provides for compensation of expert witnesses. However, the record does not reflect that Smallwood was offered as an expert or permitted by the court to qualify and testify as such, as required by section 92.231. See Lee County v. Galaxy Fireworks, Inc., 698 So.2d 1371, 1372 (Fla. 2d DCA 1997); Thellman v. Tropical Acres Steakhouse, Inc., 557 So.2d 683, 684 (Fla. 4th DCA 1990). Thus, the award cannot be upheld on that basis.

Smallwood also argues that the amount awarded to her is proper under section 92.151, Florida Statutes (1997), as witness compensation. Although section 92.151 does provide that "[c]ompensation shall be paid to the witness by the party in whose behalf the witness is summoned," section 92.142, Florida Statutes (1997), which provides that witnesses shall receive $5 per each day of actual attendance and six cents for actual distance traveled to and from the court, does not provide authority for the $1125 awarded to Smallwood.
Finally, we note that neither the trial court nor the Third District based its award of attorneys' fees against Moakley and Broz on section 57.105, Florida Statutes (1997), which allows for attorneys' fees against an attorney and a client in equal shares for bringing a complaint or defense raising a "complete absence of a justiciable issue of either law or fact." § 57.105, Fla. Stat. (1997). Therefore, we express no opinion as to whether the award of attorneys' fees would have been proper under this statute. Further, the assessment of attorneys' fees in this case preceded the enactment of the amendments to section 57.105, Florida Statutes, which became effective in October 1999. Moreover, neither party argues the applicability of the amended version of section 57.105, which is broader than the version existing at the time attorneys' fees were assessed in this case, and provides:
(1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts.
However, the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts. If the court awards attorney's fees to a claimant pursuant to this subsection, the court shall also award prejudgment interest.
(2) Paragraph (1)(b) does not apply if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.
(3) At any time in a civil proceeding or action in which the moving party proves by a preponderance of the evidence that any action taken by the opposing party, including, but not limited to, the filing of any pleading or part thereof, the assertion of or any response to any discovery demand, the assertion of any claim or defense, or the response to any request by any other party, was taken primarily for the purpose of unreasonable delay, the court shall award damages to the moving party for its reasonable expenses incurred in obtaining the order, which may include attorney's fees, and other loss resulting from the improper delay.
(4) The provisions of this section are supplemental to other sanctions or remedies available under law or under court rules.
§ 57.105, Fla. Stat. (2001) (emphasis supplied).
[2] We note that the actions in this case could not have been disciplined through the trial court's contempt power, because the contempt power is based on the failure to obey a specific judgment or order of the court. See generally Parisi v. Broward County, 769 So.2d 359 (Fla.2000); see also Levin, Middlebrooks, 639 So.2d at 609 ("[A] trial court would have the ability to use its contempt powers to vindicate its authority and protect its integrity by imposing a compensatory fine as punishment for contempt."); § 38.23, Fla. Stat. (1997) (providing for exercise of contempt power where a party has failed to abide by "any legal order, mandate or decree, made or given by any judge").