# Supreme Court of Florida

_____

No. SC17-2058
_____

**TRIAL PRACTICES, INC.,**
Petitioner,

vs.

**HAHN LOESER & PARKS, LLP, etc.,**
Respondent.

December 28, 2018

CANADY, C.J.

This case involves a dispute over the recoverable amount of prevailing party

fees and costs.  The issue presented is whether the pre-2014 version of Rule

Regulating the Florida Bar 4-3.4(b), which addresses witness payments and the

prohibition against offering inducements to witnesses, prevents the prevailing party

in this case from taxing as costs certain payments made to fact witnesses for their

"assistance with case and discovery preparation."  This Court has for review *Trial*

*Practices, Inc. v. Hahn Loeser & Parks, LLP*, 228 So. 3d 1184, 1191 (Fla. 2d DCA

2017), in which the Second District Court of Appeal concluded that the witness

payments were permitted under rule 4-3.4(b) and were thus recoverable.  The

Second District then certified the following as a question of great public importance:

> DOES RULE 4-3.4(B) OF THE RULES REGULATING THE FLORIDA BAR PERMIT A PARTY TO PAY A FACT WITNESS FOR THE WITNESS'S ASSISTANCE WITH CASE AND DISCOVERY PREPARATION?

*Id.* This Court has jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

Based on our analysis of the issue presented by this case and consistent with the text of the rule, we rephrase the certified question as follows:

> Does the pre-2014 version of rule 4-3.4(b) of the Rules Regulating the Florida Bar permit a party to pay a fact witness for the witness's assistance with case and discovery preparation that is not directly related to the witness preparing for, attending, or testifying at proceedings?

We answer the rephrased question in the negative and remand for further proceedings consistent with this opinion. Before explaining our decision, we review the language of the rule as well as the facts and procedural history of the case.

## I.  RULE 4-3.4(b)

Rule 4-3.4 is generally titled "Fairness to Opposing Party and Counsel." At all relevant times in this case, including when the case went to trial in 2011, rule 4-3.4(b) provided as follows:

> A lawyer shall not:
> . . . .

(b) fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings . . . .

In 2014, this version of rule 4-3.4(b) was amended to its current form.[1]

Unless otherwise indicated, all references to rule 4-3.4(b) are to the pre-2014 version.

## II. BACKGROUND

The relevant events began in August 2005 when Petitioner, Trial Practices, Inc. ("TPI"), entered into an agreement with Jack J. Antaramian to provide litigation consulting services to Antaramian concerning a multi-million-dollar

---

1. The 2014 amendments retained the language in the rule permitting "reasonable compensation" to witnesses under certain circumstances but removed the "reimburse" and "loss of compensation" language. *In re Amendments to Rules Regulating the Fla. Bar (Biennial Report)*, 140 So. 3d 541, 566-67 (Fla. 2014). The rule now provides as follows:

> A lawyer must not
> . . . .
> (b) fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to a witness for the time spent preparing for, attending, or testifying at proceedings . . . .

dispute with his business partner, David E. Nassif, about commercial real estate holdings (the "Nassif suit"). The consulting agreement provided that TPI would receive 5% of Antaramian's "gross recovery" in the Nassif suit. After the Nassif suit ended in a mistrial, Antaramian and Nassif resolved their dispute by entering into a complex settlement agreement involving various entities. The principal architects and drafters of the settlement agreement were Antaramian's longtime tax and business attorneys with the Boston-based firm Burns & Levinson LLP.

In the wake of the settlement agreement, TPI claimed the 5% fee based on the value of certain transferred property and the settlement of related litigation involving Antaramian and Nassif. Antaramian denied owing TPI the 5% fee, asserting that the settlement agreement with Nassif was a "walk away" agreement with no "gross recovery" to either side. In June 2006, TPI sued Antaramian for breach of the consulting agreement. Extensive discovery ensued regarding Antaramian's finances and his dealings with Nassif.

At trial in 2011, TPI presented several expert witnesses who testified that the settlement agreement in the Nassif suit resulted in a gross recovery to Antaramian of up to $100 million based on certain economic benefits including cancellation of indebtedness. Antaramian presented his own expert witness as well as ten fact witnesses, seven of whom testified in some manner to the issue of "gross recovery." Those seven witnesses—all licensed professionals involved in the

Nassif suit and the resulting settlement agreement—included: (1) two of Antaramian's attorneys in the Nassif suit;[2] (2) one of Nassif's attorneys in the Nassif suit; (3) three lawyers from Burns & Levinson LLP; and (4) Antaramian's longtime accountant who prepared Antaramian's federal income tax returns. The gist of their testimony was that the settlement agreement was designed to provide no recovery to either Antaramian or Nassif, and that there was no tax fraud or cancellation of debt income.

In April 2011, the jury returned a verdict squarely in favor of Antaramian.[3] Antaramian then moved for attorney's fees and costs under a broad fee-shifting provision in the consulting agreement. Antaramian sought approximately $2.5 million, of which $715,467.61 related to what Antaramian's controller described as "Various Fees, Costs and Expenses" and included approximately $236,000 for amounts paid or owed to the seven fact witnesses' professional firms. Approximately 75% of the $236,000 amount was for payments to Burns & Levinson, three of whose attorneys were deposed by TPI and later testified at trial.

---

2. Antaramian's lead counsel in the Nassif suit was a partner in the law firm of Hahn Loeser & Parks, LLP. That law firm is the Respondent in this case, as substitute party for Antaramian, who died in 2015.

3. The trial court later entered final judgment in favor of Antaramian, and the Second District per curiam affirmed. *See Trial Practices, Inc. v. Antaramian*, 97 So. 3d 228 (Fla. 2d DCA 2012) (table). The final judgment and Antaramian's status as prevailing party are not properly at issue before this Court.

- 5 -

In 2013, TPI requested detailed billings, which Antaramian provided. As it relates to the seven fact witnesses, the billings reflect time spent on various items, including the following: traveling to and testifying at depositions and trial; reviewing documents and conferencing in advance of deposition and trial testimony; reviewing other correspondence and documents relating to TPI's lawsuit, including in response to TPI's requests for voluminous discovery; and assisting with things such as responding to interrogatories.

An evidentiary hearing was held, and TPI argued against any fee award in part on the ground that Antaramian had secretly paid the fact witnesses at their professional billing rates for their testimony and other services. TPI cited section 92.142(1), Florida Statutes (2013), for the proposition that fact witnesses may only be paid a statutory rate of $5 for each day of "actual attendance." TPI also cited two disciplinary opinions from this Court—namely, *Florida Bar v. Wohl*, 842 So. 2d 811 (Fla. 2003), and *Florida Bar v. Jackson*, 490 So. 2d 935 (Fla. 1986)—for the proposition that it is unlawful and sanctionable conduct to pay a fact witness more than the statutory amount.

The trial court—noting that TPI had "aggressively litigated" the case, and not sharing TPI's level of concern regarding the general nature of the witness compensation—awarded Antaramian approximately $2 million in attorney's fees and costs, of which $317,873.64 represented the allowable portion of the

- 6 -

$715,467.61 in "Various Fees, Costs and Expenses" sought by Antaramian. But it is unclear how much of the $236,000 in witness payments was included in the trial court's cost award. Regarding the amounts charged by the fact witnesses for their time spent testifying at trial or deposition, the trial court appears to have awarded Antaramian $5 per day, relying on *Moakley v. Smallwood*, 826 So. 2d 221 (Fla. 2002), for the proposition that an attorney called to testify as a fact witness is only entitled to be paid $5 per day under section 92.142(1). As to the remaining amounts charged—for the witnesses' non-testimony time—the trial court appears to have awarded Antaramian some or all of those amounts on the ground that the witnesses were acting as "consulting experts" who "assisted in both case and discovery preparation."

On appeal, the Second District recognized the uncertainty regarding the cost award, noting that the amounts paid for the witnesses' non-testimony time "were *apparently* part of a $317,873.64 cost award." *Trial Practices*, 228 So. 3d at 1187 (emphasis added). Nevertheless, the Second District "agree[d] with the trial court's analysis of section 92.142 as well as the trial court's conclusion that Antaramian was entitled to recover (as costs) the fees paid to witnesses for their assistance with case and discovery preparation." *Id.* at 1190.

The Second District began by examining rule 4-3.4(b), noting that the relevant language in effect at the time of trial permitted a lawyer to pay a witness

"reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings." *Id.* at 1189 (quoting R. Regulating Fla. Bar 4-3.4(b)). The Second District also noted the 2014 amendments to the rule but dismissed their relevance. *Id.* at 1189-90. In the Second District's view, "both versions of the rule acknowledge the value of a witness's time," and "neither version of the rule makes [the payments at issue] unethical or illegal." *Id.* at 1190. Indeed, according to the Second District, payments to a witness for "time spent preparing for, attending, or testifying at the proceedings . . . have long been permitted as long as the payment is not conditioned on the content of the testimony." *Id.* (citing ABA Formal Op. 96-402 (1996), Propriety of Payments to Occurrence Witnesses). And the Second District concluded that the rule language permitting such payments "is broad enough to encompass" payments for "assistance with case and discovery preparation." *Id.* at 1191.

The Second District also addressed section 92.142, concluding that "the statute and the rule" address "entirely different and compensable items" and thus do not conflict. *Id.* at 1190. According to the Second District, the statute governs "payments to witnesses for their attendance and thus presumably their actual testimony at trial," but the rule covers "witnesses' *expenses incurred* in connection with their attendance and testimony at trial and reasonable compensation for the

time spent by the witnesses in *preparing for*, attending, and testifying at trial so long as the payments are not conditioned on the content of the witnesses' testimony." *Id.* And the district court rejected TPI's argument that payments exceeding "$5 per day constituted illegal conduct that negated [Antaramian's] right to recover prevailing party attorneys' fees and costs." *Id.*

After rejecting TPI's arguments, the Second District certified the above-referenced question. *Id.* at 1191. TPI then sought to invoke this Court's discretionary jurisdiction both on the basis of the certified question and on the ground that the Second District's decision expressly and directly conflicts with this Court's decision in the Bar discipline case of *Wohl*. *See* art. V, § 3(b)(3)-(4), Fla. Const. This Court accepted jurisdiction solely on the basis of the certified question. *See Trial Practices, Inc. v. Hahn Loeser & Parks, LLP, Etc.*, No. SC17-2058 (Fla. Apr. 3, 2018) (order accepting jurisdiction).

### III. ANALYSIS

We are asked to determine whether rule 4-3.4(b) of the Rules Regulating the Florida Bar permits a party to make certain payments to fact witnesses. This issue presents a pure question of law that is subject to de novo review. *See Rykiel v. Rykiel*, 838 So. 2d 508, 510 (Fla. 2003). We exercise our discretion and decline to address any other issues—including section 92.142, Florida Statutes—because

they are outside the scope of the rephrased certified question. *See Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 803 n.6 (Fla. 2003).

Under the plain language of rule 4-3.4(b), payments to witnesses are proper—and outside the scope of the prohibition on the "offer [of] an inducement to a witness"—if they fall within one of the following three categories: **[1]** "reasonable expenses incurred by the witness in attending or testifying at proceedings"; **[2]** "a reasonable, noncontingent fee for professional services of an expert witness"; or **[3]** "reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings." R. Regulating Fla. Bar 4-3.4(b). This Court has described these categories as "clearly delineated exceptions" from the general prohibition of inducements to witnesses. *Wohl*, 842 So. 2d at 815.

As it relates to fact witnesses, rule 4-3.4(b) reflects a balancing between two competing concepts. On the one hand, there is the obvious concern about purchasing testimony and offering inducements to color testimony. *See id.* at 816 ("[T]empting a witness to color testimony is an evil that should be avoided."). That concern is noted in the comments to the rule which state: "Fair competition in the adversary system is secured by prohibitions against . . . improperly influencing witnesses . . . and the like." R. Regulating Fla. Bar 4-3.4 cmt. On the other hand, the rule's third exception recognizes the value of a witness's time and provides an

incentive for witnesses to carry out their duty to assist in "the truth-seeking function of the trial process." *Allstate Ins. Co. v. Boecher*, 733 So. 2d 993, 998 (Fla. 1999). The sole inquiry here is whether that third exception—which permits reasonably compensating a fact witness for "preparing for, attending, or testifying at proceedings"—permits reasonably compensating a fact witness for what the district court referred to as "assistance with case and discovery preparation." *Trial Practices*, 228 So. 3d at 1190.

We agree with TPI that the question as certified by the Second District is overly "broad and undefined." Indeed, permitting payments for any type of "assistance with case and discovery preparation" would not only be inconsistent with the rule's plain language but could open the door to purchasing testimony under the pretext of such "assistance" and compromise the integrity of the fact-finding process—the very thing rule 4-3.4(b) is designed to prevent. We thus decline to broadly conclude that "assistance with case and discovery preparation" is subsumed within "preparing for, attending, or testifying at proceedings." However, we also recognize—as this case demonstrates—that there is room for overlap between the two categories. We therefore also decline to adopt a view that effectively treats the two categories as mutually exclusive.

We think the more appropriate inquiry is whether the witness's "assistance with case and discovery preparation" is directly related to the witness "preparing

for, attending, or testifying at proceedings." Although less than perfectly precise, viewing the payments through that narrower lens is consistent with the language of the rule and avoids prejudicing parties in highly complex cases such as this where they are dependent upon professionals. Indeed, not only was Antaramian required to defend himself, including against accusations of tax fraud, but it appears the professionals upon whom he was dependent also had to defend themselves against accusations of wrongdoing. One of Antaramian's former trial attorneys testified at the fee hearing regarding the "very adversarial" nature of the litigation, the "[t]ons of documents," and TPI's "theory of the case . . . that everybody on Mr. Antaramian's side of the transaction was a crook, was actually a thief and a liar." That testimony was consistent with that of others, including Antaramian's longtime accountant as well as the Burns & Levinson attorney who was the principal architect of the settlement agreement. That Burns & Levinson attorney also testified regarding "a host of complicating factors" in the case.

It would be unfair and prejudicial to conclude that, beginning the moment TPI filed suit, Antaramian's longtime professionals who had the necessary knowledge for him to begin to defend the suit, who were involved in the transaction that was the very subject of the suit, and whose own actions and character were seemingly in question, could not be reasonably compensated for *any* "assistance" regarding complex matters about which they would later be called

- 12 -

to testify. We conclude that the rule does not require such a result. But we reiterate that a fact witness's "assistance" must be directly related to the witness "preparing for, attending, or testifying at proceedings."

In reaching our conclusion, we recognize that the specifics of our holding are necessarily limited due to the uncertainties regarding the trial court's cost award—namely, what payments were included in that unitemized award. Indeed, our discussion may very well prove academic. After all, a review of the invoices reveals many line items that on their face are not even properly categorized as "assistance with case and discovery preparation" and instead fall squarely within "preparing for, attending, or testifying at proceedings" and are unequivocally permitted by the rule. Indeed, those line items either expressly reference the witness's preparation for deposition or trial, or they reference items such as the witness reviewing documents, participating in conferences with Antaramian's lawyers, or attending to other matters that are related to the witness's deposition or trial testimony. *See* ABA Formal Op. 96-402 (1996), Propriety of Payments to Occurrence Witnesses (concluding that, subject to the law of the respective jurisdiction and provided that certain other requirements are met, Model Rule 3.4 of the Model Rules of Professional Conduct permits reasonably compensating a fact witness for "time spent in pretrial interviews" and "time spent in reviewing

and researching records that are germane to his or her testimony"[4]); *see also* Florida Bar Staff Opinion 20542 (Dec. 11, 1997) (interpreting Rule Regulating the Florida Bar 4-3.4(b) as permitting two fact-witness lawyers to request reasonable compensation for "time spent by the firm in reviewing the files concerning the [subject matter of the lawyers' testimony]").

As to the remaining line items that can more properly be categorized as "assistance with case and discovery preparation," we conclude that, to the extent they were included in the cost award and to the extent they can be said to have been performed in the professional's capacity as a "fact witness," they were permissible only if directly related to the witness "preparing for, attending, or testifying at proceedings." For example, items such as reviewing correspondence and assisting with filling out interrogatories related to matters within the witness's knowledge of the case could reasonably fall within the rule. So too could items such as time spent executing affidavits. On the other hand, certain items would appear to go beyond the scope of the rule. For example, TPI asserts that one fact witness was compensated for time spent reviewing certain motions, including

---

4. Model Rule 3.4(b) provides that a lawyer shall not "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."

motions for sanctions and in limine. We agree with TPI that those items are not covered by the rule's third exception.

Although we conclude that "preparing for, attending, or testifying at proceedings" can reasonably be interpreted to include certain "assistance with case and discovery preparation," we also reiterate the importance of rule 4-3.4(b) and the prohibition against improperly influencing witnesses. Our disciplinary cases have repeatedly noted—both in the context of rule 4-3.4(b) and otherwise—the importance of avoiding even the appearance of improper influence. *See Wohl*, 842 So. 2d at 816 ("We condemn the practice of compensating fact witnesses in violation of rule 4-3.4(b) in no uncertain terms."); *Florida Bar v. Cillo*, 606 So. 2d 1161, 1162 (Fla. 1992) (concluding that it was not a violation of the then rules for an attorney "to induce [the witness] to tell the truth" about a meritless Bar complaint filed by the witness, but inviting rule development to address concerns regarding the effect of witness payments on "the credibility and fact-finding function of the disciplinary process"); *Jackson*, 490 So. 2d at 936 ("Attorneys have a solemn responsibility to assure that not even the taint of impropriety exists as to the procurement of testimony before courts of justice."). Although we do not find these disciplinary cases to be on point, we emphasize the narrow nature of the issue we address here.

## IV. CONCLUSION

We thus rephrase the Second District's certified question and hold that rule 4-3.4(b) of the Rules Regulating the Florida Bar permits a party to pay a fact witness for the witness's assistance with case and discovery preparation that is directly related to the witness preparing for, attending, or testifying at proceedings. Because it is unclear which witness payments were included in the trial court's cost award, we quash the Second District's decision on this issue and remand with instructions that the case be further remanded to the trial court for further proceedings consistent with this opinion.

It is so ordered.

PARIENTE, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.
LEWIS, J., concurs in result.

NO MOTION FOR REHEARING WILL BE ALLOWED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions/Certified Great Public Importance

Second District - Case Nos. 2D13-6051 and 2D14-86

(Hillsborough County)

G. Donovan Conwell, Jr., of Conwell Business Law, LLLP, Tampa, Florida; Raymond T. Elligett, Jr., of Buell & Elligett, P.A., Tampa, Florida; and John F. Romano of Romano Law Group, Lake Worth, Florida,

for Petitioner

Edmond E. Koester and Matthew B. Devisse of Coleman, Yovanovich & Koester, P.A., Naples, Florida,

for Respondent