DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**INFINITY AUTO INSURANCE COMPANY,**
Appellant,

v.

**METRIC DIAGNOSTIC TESTING, INC.** a/a/o **JUNIOR CELESTIN,**
Appellee.

No. 4D21-3431

[July 13, 2022]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Natasha DePrimo, Judge; L.T. Case No. COWE21-000884.

Gladys Perez Villanueva, Miami Springs, and Leslie M. Goodman of Law Offices of Leslie M. Goodman & Associates, Miami, for appellant.

John C. Daly and Christina M. Kalin of Daly & Barber, P.A., Plantation, for appellee.

GERBER, J.

In this personal injury protection (PIP) case, the defendant insurer appeals from the county court's final order requiring the insurer, as a sanction for having pled a mistaken affirmative defense, to pay the plaintiff provider's attorney's fees incurred from the date when the insurer filed the mistaken affirmative defense until the date when the insurer notified the provider about the mistaken affirmative defense.

The insurer primarily argues the county court erred in entering the sanctions order because the county court did not find the insurer had pled the affirmative defense in bad faith, but instead accepted the insurer's admission that the insurer had pled the affirmative defense by mistake. We agree with the insurer's argument and therefore reverse.

### ***Procedural History***

The insured was working as an Uber driver when he was injured in a motor vehicle accident. As consideration for treatment from the provider,

the insured assigned to the provider the right to seek PIP benefits under the insured's automobile insurance policy with the insurer. Pursuant to the assignment, the provider requested payment from the insurer.

The insurer sent a denial letter to the provider. The letter stated that the insurer was denying the claim due to a policy exclusion—specifically, the policy's "transportation network company driver amendatory exclusion endorsement." That endorsement provided: "No coverage of any kind applies under this policy for any accident, loss, bodily injury, property damage, or other damage that occurs while any insured ... is logged on to a transportation network company's digital network or while any insured ... is engaged in a prearranged ride." The insurer's denial later further stated: "We have confirmed that [the insured] was logged on to a transportation network company's digital network as a driver or who [sic] is engaged in a prearranged ride at the time of loss."

The provider filed a breach of contract action against the insurer. The insurer's original counsel filed an answer containing only one affirmative defense. That affirmative defense referenced a different insured's name and alleged the insurer had denied the claim due to a "material misrepresentation"—specifically, the insured's failure to disclose on his insurance application that he was using his vehicle for business purposes. The affirmative defense did not refer to the "transportation network company driver amendatory exclusion endorsement" upon which the insurer had relied in denying the provider's claim.

The provider filed a reply to the insurer's material misrepresentation affirmative defense. The provider also propounded discovery on the insurer pertaining to the material misrepresentation defense, and sent the insurer a proposed joint pretrial stipulation, identifying material misrepresentation as the issue for trial.

Eight days before a case management conference, the provider's counsel informed the insurer's successor counsel that the insurer had not produced any documents supporting its material misrepresentation defense. Later that day, the insurer's successor counsel filed a motion for leave to amend the insured's answer. The motion asserted the insurer's answer had mistakenly referenced the name of a different insured, and had mistakenly alleged the material misrepresentation affirmative defense. "In reality," the insurer's successor counsel argued:

> [T]he claim was denied subject to an exclusionary endorsement in the policy which requires an insured to report if he is driving for [a] transportation network company ....

2

The [provider] was aware of the basis of the denial … pursuant to the [insurer's] [denial letter], which … cit[ed] the specific exclusion and overall basis for the denial.

The [insurer's successor counsel] … responded to [the provider's] outstanding discovery requests. The discovery responses … expressly state[d] the actual reason for the denial of the claim.

Additionally, a multitude of documents produced in response to discovery reference same.

Thus, [the provider] and [its] counsel were unquestionably aware of the issues in this litigation.

The [insurer's successor counsel] was contacted by [the provider's] counsel [eight days before the case management conference] regarding documents supporting a[] [material misrepresentation] defense.

The [insurer's successor counsel] immediately took action on this matter, looking into the issues, attempting to get documentation which would appease [the provider's] counsel regarding the denial and identifying the issue with the affirmative defense.

In order to conform its pleading to the facts, [the insurer] seeks to amend its Answer and Affirmative Defenses to reflect the real reason for claim denial.

Without the revision to its defenses, this case cannot be fairly tried upon its merits and [the insurer] will essentially be forced to pay out on a claim which was expressly excluded from the policy because [the insurer's prior counsel] made a mistake.

(paragraph numbering and exhibit references deleted).

Attached to the insurer's motion was a proposed amended answer. The proposed amended answer replaced the original answer's material misrepresentation affirmative defense with a policy exclusion affirmative defense based on the "transportation network company driver amendatory

3

exclusion endorsement" which the insurer had referenced in its denial letter.

In response, the provider filed a motion to strike the insurer's pleadings. The provider argued the parties had completed discovery and the insurer was trying to change its defense to a new defense which the insurer had not timely pled. The provider's motion to strike also requested the county court to award sanctions, including payment of the provider's attorney's fees and costs.

At the case management conference, the county court granted the insurer's motion to amend, and denied the provider's motion to strike the insurer's pleadings. However, the county court ordered the insurer to pay the provider's attorney's fees incurred from the date when the insurer filed the mistaken affirmative defense until the date when the insurer notified the provider about the mistaken affirmative defense. In rendering that sanction, the county court stated:

> I understand people make mistakes … [and] … the [denial] letter [cited the policy exclusion.] [However,] for the last six months [the provider's counsel has] been litigating this case under material misrepresentation, doing all of her discovery …[.] [T]hat mistake probably cost [the provider's counsel] quite a bit of time and money that went into this. … Had [the provider's counsel] known, … maybe she could have … addressed it differently, [but] we don't know because she wasn't given the right information.
>
> ....
>
> I … think that … the state of this case warrants sanctions with regards to how the case ha[s] proceeded.
>
> So I'm going to grant the motion for leave to amend, but I['m] going to issue sanctions and … have a full [evidentiary] hearing on [the amount] because quite frankly, … I think that [the provider's counsel] may be entitled to everything worked on … from the time that answer was filed until the time that [the provider's counsel] was made aware that the answer was wrong …[.] I'm going to be looking at … all of those hours of work with regards to her discovery … [and] her motion practice …[.] [The provider's counsel] had put a great deal of work … and I need to have a full [evidentiary] hearing on [the amount] after she gives me her hours for the entire time

period, so I am going to grant sanctions … to try to alleviate that prejudice …[.]  [T]here isn't a motion before me, but I find based upon the prejudice … to the [provider] in this particular situation, that I am going to issue sanctions ….

After the case management conference, the county court entered a written order which, consistent with the oral rulings, granted the insurer's motion for leave to amend its answer, denied the provider's motion to strike the insurer's pleadings, and found that the provider was "entitled to sanctions for all work on the file relating to [the] [insurer's] [m]aterial [m]isrepresentation defense from the time that the [a]nswer was filed [nearly six months earlier] … [with the amount] to be determined by the [c]ourt at [a later] evidentiary hearing."

Before the later evidentiary hearing, the insurer attempted to challenge the county court's earlier entitlement finding by submitting affidavits attesting to the fact that the provider had been aware of the insurer's policy exclusion defense, both before the litigation based on the insurer's denial letter, and during the litigation based on the insurer's discovery responses. Then, at the evidentiary hearing, the insurer's counsel sought to raise this affidavit-based challenge.  However, the county court summarily rejected that challenge, stating:  "We're past that part already.  The Court has already issued sanctions with regards to this, so today's hearing is solely about time and amount[.]"  The county court then awarded the provider's requested time at a stipulated hourly rate.  Defense counsel asked the court to clarify whether the basis for the monetary sanctions had been the court's "inherent authority."  The county court responded:  "Yes, the Court has the discretion to issue sanctions in this particular case, rather than enter a default or do any other type of sanction."

Later, the county court entered a written order recounting the case's procedural history and, ultimately, summarizing the basis for ordering the insurer to pay monetary sanctions to the provider:

> This Court[,] … based on the [provider's] argument of prejudice[,] issued monetary sanctions as remedy to alleviate the prejudice.  The Court[] … found that the [provider] had not been aware of the exclusion defense until a few days before the Case Management hearing and had been litigating the case for several months on the basis of the [d]efense originally presented[,] [t]hereby causing [the] [provider] to unnecessarily incur fees and costs related to the original affirmative defense.

The insurer timely filed a notice of appeal of the county court's sanctions order. Two months after the insurer filed its notice of appeal, the provider filed in the county court a voluntary dismissal of its breach of contract action, reserving only "the right to collect ... monetary sanctions previously ordered."

On appeal, the insurer primarily argues the county court erred in entering the sanctions order because the county court did not find the insurer had pled the material misrepresentation affirmative defense in bad faith, but instead accepted the insurer's admission that the insurer had pled the material misrepresentation affirmative defense by mistake. The insurer also argues the error was fundamental because the county court's decision to impose sanctions occurred without having provided the insurer with an opportunity to present its affidavit-based evidentiary challenge to the sanctions determination.

## *Our Review*

Applying an abuse of discretion standard of review, we agree with the insurer's fundamental error argument and therefore reverse. *See Rivero v. Meister*, 46 So. 3d 1161, 1163 (Fla. 4th DCA 2010) ("The standard of review of an order granting sanctions for attorney misconduct is abuse of discretion."); *Moakley*, 826 So. 2d at 226-27 ("The inherent authority of the trial court, like the power of contempt, carries with it the obligation of restrained use and due process.") (footnote omitted).

A trial court's decision to impose attorney's fees as a sanction for attorney misconduct "must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." *Moakley v. Smallwood*, 826 So. 2d 221, 227 (Fla. 2002). Here, the county court failed to make an express finding of bad faith conduct when imposing sanctions against the insurer. Instead, the record reflects the county court recognized the insurer's admission—which the provider has never disputed—that the insurer's original counsel filed the material misrepresentation affirmative defense by mistake.

In this respect, *Rivero*—which discusses *Moakley*'s requirements for the imposition of sanctions upon a trial court's exercise of its inherent authority—is instructive. In *Rivero*, the provider filed a motion for sanctions, alleging that insurers and their attorneys failed to appear at a scheduled trial date. 46 So. 3d at 1162. The circuit court held a hearing on the provider's motion, and without making an express finding of bad

faith conduct, granted the provider's motion. *Id.* On appeal, we reversed the circuit court's decision, reasoning:

> [T]he [circuit] court did not make an express finding of bad faith conduct. The [circuit] court also did not make any detailed factual findings describing specific acts of bad faith conduct that resulted in the [provider's] unnecessary incurrence of attorneys' fees. Instead, the [circuit] court found that the [insurers'] attorneys were merely negligent. Because the [circuit] court did not make an express finding of bad faith conduct, we are required to reverse.

*Id.* at 1163; *see also id.* at 1164 (Damoorgian, J., concurring) ("*Moakley* simply does not allow for the imposition of sanctions for negligent conduct."); *N. Cnty. Co. v. Bologna,* 816 So. 2d 842, 844 (Fla. 4th DCA 2002) ("Here, the [circuit] court did not make an express finding of bad faith conduct on the part of appellant, nor were the [circuit] court's factual findings of misconduct detailed with the high degree of specificity required by *Moakley.* Such findings are a necessary precedent to any sanction of attorney's fees awarded under the trial court's inherent power.").

The provider's answer brief argues the county court properly exercised its authority to impose monetary sanctions pursuant to Florida Rule of Civil Procedure 1.190(e) which, according to the provider, "the Third District [has] acknowledged … gives a trial court the inherent authority to allow amendments under 'terms as may be just' which includes awarding monetary sanctions," citing *Chatmon v. Woodard,* 492 So. 2d 1115 (Fla. 3d DCA 1986).

However, the provider's reliance on *Chatmon* and rule 1.190 is misplaced for three reasons.

First, the principle for which the provider cites *Chatmon* is dicta. In *Chatmon,* an automobile negligence case which pre-dated *Moakley,* the defendant did not initially raise a dispositive affirmative defense, but after some discovery and pre-trial preparation had occurred, the defendant moved to amend the answer in order to assert a dispositive affirmative defense. *Id.* at 1116. The circuit court granted the motion and thereupon dismissed the case. *Id.* On appeal, the Third District affirmed, finding no abuse of discretion in circuit court having granted, "even at the relatively late stage to which the case had progressed, leave to amend the pleadings so as to assert an absolute, unanswerable defense to the action." *Id.* In support, the Third District cited rule 1.190(a) ("Leave of court shall be given freely when justice so requires.") and a portion of rule 1.190(e) ("At

every stage of the action the court must disregard any error or defect in the proceedings which does not affect the substantial rights of the parties."). *Id.*

In a footnote, the Third District stated: "It may have been appropriate to have conditioned permitting the amendment upon the defendant's payment of the additional costs and expenses incurred by the plaintiff as a result of the apparently inexcusable tardiness in asserting the defense." *Id.* at 1116 n.2. In support of that statement, the Third District cited another portion of rule 1.190(e): "At any time in furtherance of justice, *upon such terms as may be just*, the court may permit any process, proceeding, pleading or record to be amended or material supplemental matter to be set forth in an amended or supplemental pleading." *Id.* (emphasis supplied in *Chatmon*). However, the Third District noted that the plaintiff had not sought that relief in the circuit court. *Id.* Thus, the Third District's statement that "[i]t may have been appropriate to have conditioned permitting the amendment upon the defendant's payment of the additional costs and expenses incurred by the plaintiff" based upon rule 1.190(e) was dicta.

Second, even if we considered the Third District's footnoted statement as having been decided on the merits, the Third District decided *Chatmon* before the Florida Supreme Court decided *Moakley*. After *Moakley*, a trial court imposing monetary sanctions pursuant to its "inherent authority"— as opposed to express authorization in a rule of civil procedure—must base such action "upon an express finding of bad faith conduct … supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." *Moakley*, 826 So. 2d at 227; *cf.* Fla. R. Civ. P. 1.380(a)(4) (permitting a trial court to award expenses—"that may include attorneys' fees"—incurred in pursuing or opposing a motion to compel); Fla. R. Civ. P. 1.720(f) (permitting a trial court to impose sanctions—including "mediation fees, attorneys' fees, and costs"—against a party failing to appear for mediation). Unlike rules 1.380(a)(4) and 1.720(f), rule 1.190(e) does not expressly authorize a trial court to impose attorney's fees based upon a party's motion to amend or supplement its pleadings. We will not "interpret" such authority onto rule 1.190(e)'s plain language.

Third, as the insurer's reply brief argues, the county court did not cite rule 1.190(e) or the rule's "upon such terms as may be just" phrase to impose sanctions against the insurer. Instead, as the insurer clarified with the county court at the evidentiary hearing's conclusion, the county court relied upon its "inherent authority" to impose monetary sanctions against the insurer.

## *Conclusion*

In sum, we must reverse the county court's order imposing attorney's fees as a sanction for attorney misconduct, because the county court failed to comply with *Moakley*'s requirement that such imposition "must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." 826 So. 2d at 227. While we recognize the county court imposed the sanction because the provider's counsel's work in addressing the insurer's mistaken affirmative defense "probably cost [the provider's counsel] quite a bit of time and money," the inability to characterize the insurer's mistaken affirmative defense as "bad faith conduct" prohibited the imposition of any such sanction. We direct the county court, on remand, to vacate the sanctions order.[1]

*Reversed and remanded with directions.*

DAMOORGIAN and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] In *Rivero*, we recognized the apparent unfairness of situations like this case in which one party's conduct does not necessarily rise to the level of "bad faith conduct," but nevertheless causes another party to unnecessarily incur attorney's fees. 46 So. 3d at 1163-64. We suggested that our supreme court consider clarifying *Moakley*'s undefined "bad faith" requirement to include both intentional and reckless misconduct. *Id.* at 1164. Judge Damoorgian, in a concurring opinion, suggested a trial court should have the discretion to impose sanctions even when the conduct rises only to a negligence standard. *Id.* (Damoorgian, J., concurring). As Judge Damoorgian aptly asked, "Who should bear this cost, the victim or the perpetrator?" *Id.* Although the facts here do not rise to the level of *Rivero*'s facts, we continue to suggest that *Moakley*'s undefined "bad faith" requirement may require clarification as to its scope.